J. Stephen Bjorklund & another,[1] trustees,[2] *vs.* Zoning
Board of Appeals of Norwell.

Suffolk. December 4, 2007. - January 7, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Zoning,* By-law, Lot size, Nonconforming use or structure.

The plaintiffs' proposed reconstruction of a single-family residence, which
satisfied all dimensional requirements in the town's zoning bylaw except
the required minimum lot size, increased the nonconforming nature of the
structure within the meaning of the language contained in the second
"except" clause of G. L. c. 40A, § 6, first par. [362-363] Cordy, J., dis-
senting, with whom Ireland, J., joined.

Civil actions commenced in the Land Court Department on
June 20, 2000, and June 8, 2004, respectively.

After consolidation, the case was heard by *Alexander H.
Sands, III,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Michael C. Hayes* for the plaintiffs.

*Robert W. Galvin* for the defendant.

*Carl K. King,* for Massachusetts Chapter of the American
Planning Association, amicus curiae, submitted a brief.

Greaney, J. This case, transferred here on our own motion,
raises the issue unresolved in *Bransford* v. *Zoning Bd. of Ap-
peals of Edgartown,* 444 Mass. 852 (2005) (*Bransford*) — does
the proposed reconstruction of a single-family residence, which
satisfies all dimensional requirements in the town's zoning
bylaw except the required minimum lot size, "increase the
nonconforming nature of [the] structure" within the meaning of
the language contained in the second "except" clause of G. L.

[1] Mark K. Winchester.
[2] Of Diamond Development Realty Trust.

c. 40A, § 6, first par.?[3] In the *Bransford* case, the court was evenly divided on this issue, and the judgment of the Land Court, giving rise to that appeal, was affirmed. *Id.* at 852-853. The concurring opinion of three Justices in the *Bransford* case agreed with the conclusion of the Land Court judge that, under the second except clause, "doubling the size of the structure on an undersized (nonconforming) lot [would] increase the non-conforming nature of the structure," thereby requiring the plaintiffs to seek a special permit. *Id.* at 853 (Greaney, J., concurring, with whom Marshall, C.J., and Spina, J., joined) (concurring opinion). Justice Cordy authored a dissenting opinion. See *id.* at 863-870 (Cordy, J., dissenting, with whom Ireland and Sosman, JJ., joined) (dissenting opinion). We now adopt the result and reasoning of the concurring opinion in the *Bransford* case and apply that opinion to this case, which involves a proposal to quintuple the size of an existing residence, a more drastic expansion than the one proposed in *Bransford*. Accordingly, we affirm the judgment of the Land Court.

---

[3]General Laws c. 40A, § 6, first par., provides in pertinent part (with the second "except" clause italicized):

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent *except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure.* Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming [structure or] use to the neighborhood. . . ." (Emphasis added.)

The bracketed phrase "structure or" appearing in the second sentence quoted above was first supplied by *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 21 (1987), and later noted and applied in *Rockwood* v. *Snow Inn Corp.*, 409 Mass. 361, 363 n.4, 364 (1991).

The background of the case is as follows. The plaintiffs own the property at 150 Prospect Street in Norwell, which is located in the residential district A. The lot size, or area, of the property consists of 34,507.6 square feet (.792 acres). Situated on the property is a one-bedroom, one-story, single-family house, and a shed. The house has 675 square feet of living space, and is thirty feet long (along its frontage). The house is set back thirty-five feet, nine inches, from the front property line.

The lot, house, and shed predate zoning in the town. Under the town's current zoning bylaw,[4] a minimum lot area of one acre (43,560 square feet), a front setback of fifty feet,[5] and a side setback of twenty feet[6] are required for buildings and structures located in residential district A.[7,8]

The plaintiffs propose to tear down the existing house and remove the shed. They plan to construct a new house, essentially a new and much larger house, that will comprise 3,600 square feet of living space. The new house will have three bedrooms; will be either a two, or a two and one-half, story structure; and will include an attached garage for two vehicles.[9] The footprint of the new house will be approximately 1,920 square feet. There will be an additional 900 square feet of impervious surface on the property to account for the proposed driveway.[10] The new house

[4]The parties have reproduced only portions of the zoning bylaw. These portions did not contain any definitions. It is helpful to have a complete copy of the zoning bylaw.

[5]The zoning bylaw allows a front setback based on the averaging of the abutting yards on either side of the property.

[6]Concerning the side setback, the zoning bylaw provides that no structure "shall be erected or placed within 20 feet of a side or back line except that with respect to a building and/or structure existing on July 7, 1955, *additions* thereto may be erected or placed within 20 feet, but not within 10 feet of a side line" (emphasis added).

[7]Under the zoning bylaw, all lots in all districts of the town must be at least one acre.

[8]With respect to residential districts in the town, the zoning bylaw does not regulate the "footprint," or amount of land area occupied by the house, and does not contain a "ground coverage ratio" provision, or ratio of building area to lot area on a parcel. See *Bransford* v. *Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 854 n.3 (2005) (Greaney, J., concurring, with whom Marshall, C.J., and Spina, J., joined) (defining "footprint" and "ground coverage ratio").

[9]The garage accounts for 600 square feet of "living" area.

[10]The plaintiffs assert that the proposed reconstruction covers only seven

will be sixty-eight feet long (along its frontage) and will have a front setback of thirty-seven feet. The placement of the house on the lot is restricted due to the existence of wetland areas on the property. The plaintiffs' proposal complies with all dimensional requirements of the bylaw with the exception of the one-acre minimum lot area requirement.[11]

Prospect Street is winding with elevation changes. To the north of the plaintiffs' property are nine homes containing an average of 2,638 square feet of living area, all located on lots that are at least one acre. To the south of the property are fourteen homes containing an average of 2,088 square feet of living area. Only one of these homes is located on a lot that is smaller than one acre, and that home has 1,472 square feet of living area. The undersized lots on Prospect Street have smaller, "rural farmhouse-type houses" located on them. The larger homes on the street are located further back from the street in comparison to the plaintiffs' proposed new house.

The plaintiffs filed a request for a finding under G. L. c. 40A, § 6, and § 1642 of the zoning bylaw[12] with respect to their proposed reconstruction. The defendant, the zoning board of ap-

---

per cent of the lot. Neither the defendant, the zoning board of appeals of Norwell (board), nor the judge, however, made any finding on the issue of ground coverage ratio, and the plaintiffs have not substantiated their assertion with any materials in the record appendix. Even assuming the percentage is correct, a small ground coverage ratio has no bearing on the plaintiffs' inability to satisfy the minimum lot area requirement. The ratio hardly can be said to be determinative of the issue of intensification.

[11]There was conflicting evidence at trial concerning the plaintiffs' compliance with the side setback requirement as to one of the sides of the proposed new house, see note 6, *supra*. Because the board did not contest the plaintiffs' compliance with the side setback requirement, the judge found that the requirement had been satisfied.

[12]Section 1642 of the bylaw is entitled "Change, Extension, or Alteration," and reads: "As provided in G. L. c. 40A, § 6, a nonconforming single- or two-family dwelling may be altered or extended provided that doing so does not increase the nonconforming nature of said structure. Other pre-existing nonconforming structures or uses may be extended, altered, or changed in use on Special Permit from the Board of Appeals if the Board of Appeals finds that such extension, alteration, or change will not be substantially more detrimental to the neighborhood than the existing nonconforming use. Once changed to a conforming use, no structure or land shall be permitted to revert to a nonconforming use."

peals of Norwell (board), denied the request,[13] and the plaintiffs appealed to the Land Court pursuant to G. L. c. 40A, § 17. The case was remanded to the board. The board concluded that, under G. L. c. 40A, § 6, and § 1642 of the zoning bylaw, the proposed reconstruction would increase the nonconforming nature of the structure and would be substantially more detrimental to the neighborhood than the existing structure. In its decision, the board made several findings, including the following. The impact of the length of the proposed new house (over twice the length of the original house) could not be screened or diminished because of limited available setback caused by wetlands. The height of the proposed new house would increase the impact of the structure. Due to the placement, length, and height of the proposed new house, the reconstruction would not be in keeping with the rural character and aesthetics of the neighborhood. The reconstruction would add noise and light to the neighborhood; would eliminate open space and screening; and would lead to the parking of motor vehicles along, or next to, a narrow country road, Prospect Street, all to the detriment of the neighborhood and the safety and welfare of its residents and persons using Prospect Street. The reconstruction would, because of the proposed new house's length, height, and placement, intensify and exacerbate the present nonconformity of the property.[14]

The plaintiffs appealed from the board's decision on remand to the Land Court, and the case was consolidated with the plaintiffs' initial case. After a trial, which included taking a view of the property, the Land Court judge entered a comprehensive decision affirming the board's findings and decision. Relying on the concurring opinion in the *Bransford* case, the judge determined that the board's decision, that the proposed reconstruction would increase the nonconforming nature of the house, was based on legally tenable grounds and was otherwise proper. The judge also concluded that there was sufficient evidence to support the board's finding

---

[13]The plaintiffs' proposed reconstruction received approval from the local board of health and conservation commission.

[14]The board asked the plaintiffs if they would consider constructing a house with approximately 2,000 to 2,200 square feet of living area and a reduced building width along its frontage. The board "did not receive an encouraging response."

that the proposed reconstruction would be substantially more detrimental to the neighborhood than the existing house. Judgment entered, and this appeal followed.

The plaintiffs do not challenge the judge's determination that reconstruction of the house would result in substantial detriment to the neighborhood. The *sole issue* before us is whether the plaintiffs' proposed reconstruction increases the nonconforming nature of the structure under the second except clause of G. L. c. 40A, § 6. For the reasons stated in the concurring opinion in the *Bransford* case, we affirm the Land Court judgment. *Id.* at 853-862 (concurring opinion).

We need not repeat the content of the concurring opinion in the *Bransford* case. However, some additional observations are in order. The plaintiffs do not contend that a different conclusion is compelled by § 1642 of the zoning bylaw, see note 12, *supra.* The plaintiffs did not argue below, before judgment entered, that a different provision of the zoning bylaw might exempt their property from the one acre lot area requirement. The judge did not abuse his discretion in refusing to consider the plaintiffs' new contention on a motion to reconsider the judgment. See *O'Donnell* v. *Bane,* 385 Mass. 114, 121 (1982). See also *Harley-Davidson Motor Co.* v. *Bank of New England-Old Colony, N.A.,* 897 F.2d 611, 616 (1st Cir. 1990), and cases cited.

The board does not dispute that the plaintiffs could reconstruct a house on the lot, or modernize the existing house, in keeping with the existing structure's building footprint and living area. The plaintiffs cannot be compelled to remove the existing house because of the protection granted to a preexisting structure on a preexisting nonconforming lot. Concerns over the making of small-scale alterations, extensions, or structural changes to a preexisting house are illusory. Examples of such improvements could include the addition of a dormer; the addition, or enclosure, of a porch or sunroom; the addition of a one-story garage for no more than two motor vehicles; the conversion of a one-story garage for one motor vehicle to a one-story garage for two motor vehicles; and the addition of small-scale, proportional storage structures, such as sheds used to store gardening and lawn equipment, or sheds used to house swimming pool heaters and equipment. Because of their small-scale nature, the improvements

mentioned could not reasonably be found to increase the nonconforming nature of a structure,[15] and we conclude, as matter of law, that they would not constitute intensifications.[16] More substantial improvements, or reconstructions, would require approval under the second except clause and under the terms of an existing ordinance or bylaw that will usually require findings of the type specified in § 1642 of the Norwell bylaw.

Our decision recognizes that many municipalities do not welcome the building of structures that represent the popular trend of "mansionization." This is especially so when the structures involve reconstruction on nonconforming lots. The expansion of smaller houses into significantly larger ones decreases the availability of would-be "starter" homes in a community, perhaps excluding families of low to moderate income from neighborhoods. Municipalities may permissibly exercise their police power to attempt to limit these potential adverse effects. Doing so is consistent with the Legislature's concern for the critical need for affordable housing, see *Jepson* v. *Zoning Bd. of Appeals of Ipswich, ante* 81, 95 (2007), and cases cited, and with the autonomy given local communities to determine land use issues sensibly.

The final determination, of course, is for the Legislature, if it chooses to eliminate the controversy that has arisen over the meaning of the second except clause, by changing or clarifying our decision. For now, the equipoise created by the *Bransford* decision is altered to move the weight of the law to the Land Court's position as explained in the concurring opinion in *Bransford* and here.

*Judgment affirmed.*

CORDY, J. (dissenting, with whom Ireland, J., joins). I agree with the court's conclusion that certain "small-scale alterations,

---

[15]Owners intending such projects, however, are obliged, nevertheless, to seek approval by the local building inspector if required.

[16]Indeed, counsel for the board acknowledged that such modest additions create an illusory problem under the second except clause, and that, in response, many municipalities have placed exceptions in their zoning codes permitting additions and structures of the type listed in the examples as nonintensifications.

extensions, or structural changes to a preexisting house" could not reasonably be found to increase the nonconforming nature of a house whose only nonconformity is that it is located on a smaller lot than what the town's zoning bylaw now requires as a minimum for future residential development. *Ante* at 362. I continue to disagree, however, with the court's conclusion that the reconstruction and enlargement of an existing single family residence that fully complies with current zoning and building size requirements, except minimum lot size, "increase[s] the nonconforming nature of [the] structure," such that the grandfathering provisions of G. L. c. 40A, § 6, first par., provide it no protection. *Ante* at note 3. My disagreement with the court's reasoning is set forth in the dissenting opinion in *Bransford* v. *Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 863 (2005) (*Bransford*) (Cordy, J., dissenting, with whom Ireland and Sosman, JJ., joined), and need not fully be repeated here.

It does bear repeating, however, that the size of residential structures is not regulated by minimum lot size requirements. Rather, a town may (among other things) impose setback requirements, height restrictions, and even lot coverage ratios for this purpose, as apparently the town of Norwell does. Thus, while a preexisting residential structure that exceeds building size requirements may remain pursuant to G. L. c. 40A, § 6, first par., any attempt to alter, reconstruct, or extend the structure in a manner that would increase its size would plainly "increase the nonconforming nature of [the] structure," thereby removing such an alteration, reconstruction, or extension from the protection of the statute and requiring a special permit.

Minimum lot size requirements are, however, of a different nature. They limit the number of dwellings that can be built in a town, thereby limiting the density of the population, and most particularly the number of families who may reside there and the burden such families place on town services (such as schools, sewers, and public safety). A home on a lot that has become nonconforming because of an increase in minimum lot size is not nonconforming because of the size of the structure. The nonconformity is that there is a dwelling on the lot at all. Whether the dwelling is 675 square feet or 3,500 square feet is irrelevant to the nonconformity of its lot — the latter is as nonconforming

as the former. Consequently, increasing the dwelling's size (so long as permitted by current setback and other building-size requirements) cannot be said to increase a nonconformity that has nothing to do with building size. There will still be one, and only one, dwelling on the property.

For these reasons, and those regarding what I perceive to be the Legislature's intention to provide greater protection for the owners of single-family and two-family homes (as discussed in the *Bransford* dissent), I respectfully dissent from the court's interpretation of the statute to the contrary.