74 Mass. App. Ct. 481 (2009)                481

Eastern Point, LLC v. Zoning Board of Appeals of Gloucester.

Eastern Point, LLC *vs.* Zoning Board of Appeals of
Gloucester & others.[1]

No. 07-P-1766.

Essex. November 14, 2008. - June 24, 2009.

Present: Green, Sikora, & Rubin, JJ.

*Zoning,* Nonconforming use or structure.

A Superior Court judge properly affirmed a decision of a local zoning board
of appeals (board) permitting a homeowner to reconstruct on his property a
prior nonconforming residence that had been destroyed by fire and to do
so without authority of either a variance or a special permit, where the
board's decision was supported by the flexibility within the critical ordinance
language (requiring that the reconstructed house be "rebuilt in substantially
the form" of the destroyed house), the practical accommodation of
reconstructive variations from a residential structure of a prior century, and
the deferential judicial review of local board applications of such discretion-
ary formulations. [485-488] Green, J., concurring.

Civil action commenced in the Superior Court Department on
December 6, 2001.

The case was heard by *Howard J. Whitehead,* J.

*Joel A. Kozol* (*Christine P. Deshler* with him) for the plaintiff.

*Brian P. Cassidy* for Virgil Martinonis.

*Suzanne P. Egan* for zoning board of appeals of Gloucester &
another.

Sikora, J. Eastern Point, LLC (plaintiff), brought suit in
Superior Court seeking reversal of a decision of the zoning
board of appeals of Gloucester (board). That decision permitted
Virgil Martinonis (defendant) to reconstruct on his property a
house that had been destroyed by fire and to do so without
authority of either a variance or a special permit. In the event of
catastrophic destruction of a prior nonconforming residence, a

---

[1]Acting building inspector for the city of Gloucester and Virgil Martinonis.

provision of the Gloucester zoning ordinance (ordinance) allows reconstruction of the house "in substantially the form" of the destroyed house. A judge of the Superior Court agreed with the board's interpretation of that provision and affirmed the board's decision. The plaintiff appeals from the judge's decision and claims that the defendant did not rebuild in substantially the form of the old house. We affirm the Superior Court judge's decision.

1. *Background.* Eastern Point is a peninsular Gloucester neighborhood bounded on the north and northwest by Gloucester's outer harbor and on the south and east by the Atlantic Ocean. Eastern Point Boulevard runs along the side of the Point facing the harbor. The majority of the homes on the boulevard are large, estate-type structures with substantial yards. The plaintiff's large, wooden home sits at 76 Eastern Point Boulevard on the landward side of the street. The defendant's house sits across the street, on the waterfront.

A large Victorian home stood on the defendant's property from the nineteenth century until a fire completely destroyed it in 2001. That home predated the adoption of the ordinance. After enactment of the ordinance, the home became a prior nonconforming structure for its failure to conform to the maximum height requirement as well as setback requirements for front and side yards. The ordinance sets the maximum building height at thirty feet, the minimum front yard setback at forty feet, and the minimum side yard setback at thirty feet.

a. *The board's proceedings.* Soon after the fire, the defendant sought to build a replacement home. He hired an architect and obtained plans for construction. Like the former structure, the planned new home would violate maximum height and front and side yard setback requirements. The defendant applied to the board for a variance. The board reviewed the plans and conducted a hearing at which the plaintiff appeared in opposition. At the conclusion of that process, the board determined that the defendant did not need a variance because he could construct the new house as a matter of right pursuant to § 2.4.5 of the ordinance. That provision states: "In the case of destruction or damage by fire or other catastrophe, a building or structure existing at the time of the adoption of this Ordinance may be rebuilt in substantially the form as it was at the time of the destruction or

damage, or in any form if within applicable set-back requirements and not larger than previously." The plaintiff subsequently brought suit in Superior Court, pursuant to G. L. c. 40A, § 17,[2] to appeal the board's decision.

While that action was pending, the defendant began construction of the new home. In an effort to block the construction, the plaintiff sought injunctive relief in the Superior Court. A Superior Court judge denied the request for relief but warned the defendant that continued construction ran the risk of a later order to remove any structure found to violate the ordinance. In addition, the judge directed the board to make further findings whether the new house would be more nonconforming than the old one and whether it would be substantially more detrimental to the neighborhood. Both G. L. c. 40A, § 6, and § 2.4.3 of the ordinance require such findings in certain circumstances.[3]

---

[2]General Laws c. 40A, § 17, as appearing in St. 1989, c. 649, § 2, states in pertinent part: "Any person aggrieved by a decision of the board of appeals or any special permit granting authority . . . may appeal to . . . the superior court department in which the land concerned is situated . . . ."

[3]General Laws c. 40A, § 6, inserted by St. 1975, c. 808, § 3, governs prior nonconforming uses, and states in pertinent part:

> "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence . . . before the first publication of notice of the public hearing on such ordinance or by-law . . . , but shall apply to . . . any reconstruction . . . begun after the first notice of said public hearing . . . except where . . . reconstruction . . . [of] a single or two-family residential structure *does not increase the nonconforming nature of said structure*. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority . . . that such change, extension or alteration *shall not be substantially more detrimental than the existing nonconforming use to the neighborhood*." (Emphasis supplied.)

Section 2.4.3 of the ordinance states in pertinent part:

> "This Ordinance shall not prohibit the . . . reconstruction or structural change of a pre-existing nonconforming use or structure so long as a Special Permit is issued by the Board of Appeals, after *finding that such . . . reconstruction or structural change is not substantially more detrimental than the existing nonconforming use or structure to the neighborhood*. The above requirement does not apply to such [a] . . . *reconstruction or structural change to a single or two-family residential structure which does not increase the nonconforming nature of that structure*." (Emphasis supplied.)

After conducting further proceedings, the board reaffirmed its earlier determination that construction of the new home was permissible as a matter of right. It again consulted § 2.4.5 of the ordinance and determined that the planned new house would be "in substantially the form" of the old house. Further, the board found, as required by G. L. c. 40A, § 6, and § 2.4.3 of the ordinance, that the new house would not increase the non-conforming nature of the old house and would not be substantially more detrimental to the neighborhood. The case proceeded to trial; by that time construction of the new house was complete.

b. *The old house.* In Victorian style, the former house had featured a steeply pitched roof and numerous gables. The front of the house was 105 feet long at its base. Its highest ridgeline was approximately thirty-six feet from the front grade and ran for almost fifty-two feet. The center part of the house contained three stories of living space, and the house had single story wings on either end. A one-story library jutted out from the right center of the house toward the street and was approximately thirty-seven feet long and fourteen feet wide. The front setback was ten feet and the encroachment consisted solely of the library. On the right side of the house, the setback was approximately twenty feet and consisted of a wing extending for approximately sixteen feet along its side. Finally, the old house contained 9,611 square feet of space, 5,917 square feet of which was living space.

c. *The new house.* The new house has a contemporary design and is made of brick. It appears "fuller" or "fatter" than the old house, and the trial judge described it as having "a sort of Mediterranean flair." It occupies much of the same footprint as the old house, but with a deeper front setback. The front of the house is approximately ninety-six feet long at its base. Its highest ridgeline is approximately thirty-four feet from the front grade and runs for eighteen feet. The center part of the house is two stories, and like the old house, the new house drops down to a single story at either end. A garage protrudes from the front right of the house toward the street. The house's front setback is approximately thirty feet, and the encroachment consists of the front of the garage, which runs for twenty-four feet. The right side yard setback is approximately twenty-two feet, and the encroachment consists of the side of the garage, which runs

for approximately thirty-one feet. The new house contains 14,769 square feet of space, with 9,569 square feet of living space, so that the over-all volume of the new house is fifty-four percent greater than that of the old house.

d. *The trial judge's decision.* After the four-day bench trial, the Superior Court judge dictated his detailed decision from the bench. He carried out de novo fact finding, as G. L. c. 40A, § 17, requires. See *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 355 (2001). He deferred to the board's reasoning, however, because he determined that it was not "arbitrary, capricious, or an abuse of discretion." Thus, he affirmed the board's decision that the new house was "rebuilt in substantially the form" of the old house for the purpose of § 2.4.5 of the ordinance. The judge determined that "the essential goals of the zoning laws should be maintained" and that the board's decision "maintain[ed] those goals."

In reaching his conclusion, he noted the following. The new house is "nearly the same height as the original," but the new house's over-all impact on the front elevation "is somewhat less imposing than that of the old house." Additionally, the new house shares roughly the same footprint with the old house. Although the front extension is now on the right of the house, as opposed to the center, its positioning is "an improvement on the overall impact of the house." Finally, the total square footage of the new house's encroachments roughly equaled those of the old house. Although the depths of the new house's front and side setback encroachments are less than those of the old house, their lengths are nearly double those of the old house. The result of the reconstruction is a house somewhat lower, longer, and more conforming to setback standards. The effect of the variation for the ocean vista from the plaintiff's property across the road would be a marginally enlarged view of the water above the lowered roof line and a marginally diminished view of it at the ends of the new house.[4]

2. *Discussion.* A well settled standard of review applies to

---

[4]The board's final decision included the following statement: "The [b]oard also finds that the totality of the roof line, viewed from the composite front elevation rendering by [the architect], actually takes up less overall view than the old structure considering both sides of the house, and from the perspective of detriment to the neighborhood rather than one neighbor, that is significant."

Superior Court decisions reviewing zoning board of appeals decisions. *Steamboat Realty, LLC* v. *Zoning Bd. of Appeal of Boston*, 70 Mass. App. Ct. 601, 602 (2007). We accept the trial judge's findings of fact unless they are clearly erroneous, but we determine independently the application of the law to those facts. *Ibid.* Decisions under G. L. c. 40A, § 17, have developed the following refinements. We will uphold a zoning board's decision and that of the reviewing Superior Court "if a rational basis for the [decision] exists which is supported by the record." *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. at 356. Reviewing courts will interpret zoning by-laws "in accordance with ordinary principles of statutory construction, with some measure of deference given to the board's interpretation." *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose*, 50 Mass. App. Ct. 133, 138 (2000). See *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. 921, 923 (1997) (board's reasonable interpretation of zoning by-law entitled to deference); *Petrillo* v. *Zoning Bd. of Appeals of Cohasset*, 65 Mass. App. Ct. 453, 460 (2006) (in circumstances of ambiguity in by-law, reviewing court will give deference to local board's interpretation). However, a measure of rational deference still requires meaningful review.

We must construe and apply the ordinance language of § 2.4.5 permitting a prior nonconforming home to "be rebuilt in substantially the form" existing before destruction. The words "substantially the form" are not precise. The ordinance does not furnish a definition of the phrase. Therefore, we use "ordinary principles of statutory construction" to determine the meaning of the phrase, *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 290 (1981), but we give "some measure of deference . . . to the board's interpretation." *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose, supra* at 138. When construing a statute that does not define its words, "we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). "We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Ibid.*

The Supreme Judicial Court has held that "rebuild" means "to build again" and "is an 'everyday term' whose meaning can be determined 'according to the common and approved usages of the language.' " *Berliner* v. *Feldman*, 363 Mass. 767, 771 (1973), quoting from *Jackson* v. *Building Inspector of Brockton*, 351 Mass. 472, 475 (1966). "Substantially" is the adverbial form of "substantial," a word which has multiple definitions. The meaning applicable here is "[c]onsiderable in importance, value, *degree*, amount, or *extent*" (emphasis supplied). American Heritage Dictionary 1213 (2d college ed. 1985). "Form" also has multiple definitions. The meaning applicable here is "[t]he outer shape or structure of something, as distinguished from its substance or matter." Black's Law Dictionary 678 (8th ed. 2004). Thus, the phrase "rebuilt in substantially the form as it was at the time of the destruction or damage" means to build again with an outer shape or structure resembling to a considerable degree or extent the outer shape or structure at the time of destruction.

Our analysis does not end with our own construction of the phrase, though, because we must consult the board's interpretation of the ordinance in order to give "some measure of deference" to it. See *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose*, 50 Mass. App. Ct. at 138. In its initial decision, the board did not expressly interpret the ordinance. One can deduce the board's interpretation of the language in question, however, from the brief discussion accompanying its conclusion. The board based its conclusion both on the footprint of the new home, which the plans indicated would be "nearly the same" as that of the old home, and on the more conforming nature of the new home as compared to the old home.

In the board's supplemental findings, made at the direction of a Superior Court judge after he had denied the plaintiff's request for an injunction, the board analyzed § 2.4.5 of the ordinance and its application to the planned new home in greater detail. The board still focused on the similarity in footprints and the planned new home's more conforming nature. The board did add the following illuminating language: "The proposed structure is most certainly not identical to the previous structure. But Section 2.4.5 relief does not require that a century or more old style of summer mansion . . . be duplicated identically. Modern

considerations of energy, cost, sensible layouts, neighborhood compatibility and style are permitted under 2.4.5." Therefore, according to the board's interpretation of § 2.4.5, a new home may have at least a somewhat different architectural style from that of a destroyed home and still have substantially the form of the destroyed home, as long as the homes share similar footprints and the new home is more conforming than the old home.

The board's interpretation of the ordinance does not conflict with our construction of it. We construe the ordinance to require a degree of resemblance between the outer shape or structures of the two homes. It would be unwise, however, to apply that requirement restrictively. One observation of the trial judge is especially instructive: "It is important to remember that Gloucester, like many municipalities in coastal Massachusetts, contains many very old houses whose architecture and construction, although quaint, are not well-adapted to a modern lifestyle. Excessive strictness in the reconstruction of those houses after a catastrophe would reflect a triumph of sentimentality over practicality." That practical consideration requires a tolerable degree of difference in architecture and aesthetics between the old and new structures. In sum, the flexibility within the critical ordinance language ("rebuilt in substantially the form"), the practical accommodation of reconstructive variations from a residential structure of a prior century, and the deferential judicial review of local board applications of such discretionary formulations support the rationality and validity of the board's decision. See *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. at 356.

3. *Conclusion.* For the foregoing reasons, we conclude that both the Superior Court and the zoning board of appeals of Gloucester determined correctly that § 2.4.5 of the Gloucester zoning ordinance allowed the defendant to rebuild his home without a variance or special permit.

*Judgment affirmed.*

GREEN, J. (concurring). I agree that the defendant was entitled to construct his new house without a variance. I write separately because I do not share the majority's view that the new house is

in "substantially the form" of the previous structure. As the majority opinion amply details, the new structure is substantially larger than the previous structure. See *ante* at 484-485. It has a markedly different shape and occupies a different footprint (though, to be sure, significant portions of the footprint of the new house overlay portions of the footprint of the former structure). Though I acknowledge the deference we (like the trial judge) owe to the zoning board of appeals of Gloucester (board) on matters of interpretation of the Gloucester zoning ordinance, I do not consider it reasonable to construe the ordinance to treat a structure so different in size, shape, and configuration as being "in substantially the form" of the structure it is designed to replace, so as to be entitled to a building permit as a matter of right. Cf. *Berliner* v. *Feldman*, 363 Mass. 767, 774-775 (1973) (discussing the extent of deviation permissible under ordinance authorizing structures destroyed by fire to be "rebuilt," and observing, inter alia, that "[t]he floor area, ground coverage, number of stories, and height and other dimensions of [the destroyed structure] delimit the maximum permissible size and shape of the rebuilt structure").[1]

I would affirm the judgment of the Superior Court (in turn affirming the board's decision that the defendant is entitled to build the new house) on grounds other than those relied upon by the trial judge. See *Brunelle* v. *W.E. Aubuchon Co.*, 60 Mass. App. Ct. 626, 629-630 (2004). As the majority note, prior to trial a judge of the Superior Court (who was not the trial judge) wisely remanded the matter to the board for the entry of further findings addressing whether the proposed new house would be more nonconforming than the old one, and whether it would be substantially more detrimental to the neighborhood.

Under the so-called "second except" clause of the first sentence of the first paragraph of G. L. c. 40A, § 6, reconstruction, extension, or structural change of a single or two-family residential structure is allowed if the change or reconstruction does not

---

[1]Notably, the court concluded in *Berliner* that the replacement structure should be limited to the size and shape of the previous structure under a by-law provision that authorized structures destroyed by fire to be "rebuilt," but contained no condition or requirement that the replacement be in "substantially the form" of the previous structure. 363 Mass. at 773-775.

increase the nonconforming nature of the structure. Under the second sentence of the same paragraph, pre-existing nonconforming structures may be altered or extended upon a finding by the special permit granting authority that the resulting structure will not be substantially more detrimental to the neighborhood.[2]

On remand, the board found that the new house did not increase the nonconformities inherent in the previous structure. The board identified three areas of nonconformity in the previous structure (front yard setback, north side yard setback, and height) and compared the new house to the previous structure on each ground. The front yard setback of the new house is 30.3 feet, compared to fifteen feet with the previous structure and a minimum required setback of forty feet. The north side yard setback of the new house is 21.7 feet, compared to 19.8 feet for the previous structure and a minimum requirement of thirty feet. Finally, the height of the new building is 33.7 feet, compared to thirty-four to thirty-five feet for the previous structure and a maximum limit of thirty feet. Thus, the extent of any setback encroachment is reduced in the new house, as is the nonconformity in height. Though the length of portions of the new house lying within the front and side yard setback areas is somewhat longer than with the previous structure, I do not consider unreasonable the board's conclusion that the new house does not "intensify the existing nonconformities or result in additional ones." *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 22 (1987).[3]

Moreover, even were I persuaded that the board was incorrect in this regard, and that the new house intensifies the pre-existing nonconformities,[4] the board's further finding that the new house is not substantially more detrimental to the neighborhood concludes the matter.[5] Though the second sentence of the first

_____

[2]Section 1.4.1.1(a) of the Gloucester zoning ordinance designates the board as the special permit granting authority.

[3]We extend substantial deference to the board's judgment on the question whether the new house would intensify the pre-existing nonconformities. See *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 356 n.11 (2001), citing *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 57 (1985).

[4]It is clear that it creates no new ones.

[5]The plaintiff does not challenge the board's finding of no substantial detriment, and such a finding is one to which we extend substantial deference — far more than the deference owed to the board's interpretation of the ordinance. See *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. at 356 n.11.

paragraph of G. L. c. 40A, § 6, does not expressly include "reconstruction" within its scope, it is at least implicit in the discussion by the Supreme Judicial Court in *Bransford* v. *Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 862-863 (2005) (Greaney, J., concurring), and *Bjorklund* v. *Zoning Bd. of Appeals of Norwell*, 450 Mass. 357, 360-361 (2008), that a single family residence may be constructed in replacement of a pre-existing nonconforming residence, even if it increases or intensifies the nonconformities, upon a finding that the new structure will not be substantially more detrimental to the neighborhood.[6] Moreover, § 2.4.3 of the Gloucester ordinance (unlike the local by-laws involved in *Bransford* and *Bjorklund*)[7] expressly authorizes the board to allow, by special permit, the reconstruction of a pre-existing nonconforming single or two-family residence that increases the nonconforming nature of the structure. In my view, the board's supplemental finding of no substantial detriment, entered pursuant to the pretrial remand order, puts to rest any lingering question concerning the validity of its approval of the proposed new house.[8]

---

[6]Such treatment is eminently reasonable, in light of the heightened protection the statute extends to single and two-family residences. Since the statute expressly authorizes reconstruction of such structures by right, so long as the reconstruction does not increase the nonconformities, and authorizes in turn extensions or alterations upon a finding of no substantial detriment, there appears no reason why a reconstruction that extends or alters a pre-existing nonconforming single family residence should not be permitted upon a finding that the resulting residential structure will not be substantially more detrimental to the neighborhood.

[7]Section 11.9(f) of the local zoning by-law in *Bransford*, like the second sentence of G. L. c. 40A, § 6, addresses changes, extensions, or alterations of nonconforming structures upon a finding of no substantial detriment. See 444 Mass. at 855 n.5 (Greaney, J., concurring). To like effect is § 1642 of the by-law involved in *Bjorklund*. See 450 Mass. at 360 n.12.

[8]Though the board did not cast its decision as the grant of a special permit (by reason of its view that the proposed construction is permitted as a matter of right), I see no purpose in remanding the matter to the board to allow it to reframe its decision as a grant of special permit, in light of its evident endorsement of the project, and its finding that the new house will not be substantially more detrimental to the neighborhood.