The board of zoning appeal of Cambridge (board) appeals from a judgment of the Land Court overturning the board's denial of the variance and special permit applications filed by the plaintiff, Richard D. Fanning. For the reasons that follow, we reverse.
Background. Fanning owns and occupies one side of an attached, duplex-style townhouse located on Cornelius Way in Cambridge (city) in the C-1 residential zone. His single-family unit is part of a townhouse development built around 1985. Fanning's lot, containing 6,248 square feet, is the largest of the fifty-four lots in the development, and has one off-street parking space.
In 2011, the board granted Fanning a variance to construct an addition which, when built, expanded his unit by more than twenty-five percent.[2] On the application, Fanning identified the rear lot line as 32.40 feet wide and, noting the city zoning ordinance's (ordinance) fifty-foot width requirement, labeled it as "existing non-conforming." The application also noted that the western lot line (shared with the other side of the duplex) has a zero setback in contrast to the required 8.9 foot setback, though the addition would be twenty-four feet from the western property line. Fanning communicated to the board in his application that a variance was required because his unit was nonconforming and the addition exceeded twenty-five percent of the original structure.[3]
At the hearing in 2011, Fanning introduced a statement of support from twenty-seven of his neighbors. The board granted the variance, finding that there were circumstances involving a substantial hardship relating to this property within the meaning of G. L. c. 40A, § 10, and that "desirable relief could be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the [o]rdinance." The board conditioned approval on compliance with the plans submitted and initialed by the chairman. There was no appeal from any aspect of the decision.
Off-street parking in the townhouse development is in the form of parking spaces in the front yard of each unit. In March of 2013, asserting that he hoped to rent out space in his unit, Fanning sought a variance and special permit for a second driveway cut and off-street parking space, requesting relief from article 6.43.3(c) of the ordinance, which allows only one curb cut per lot for lots with less than 100 feet of frontage, and article 6.44.1(c), which prohibits parking spaces within a required front yard setback. Pursuant to article 6.43.5(c), the one space per 100 feet of frontage may be modified by special permit if the board "determines that traffic and safety would be facilitated by exceeding this maximum." Relief from the prohibition of parking in a required front yard required a variance.
Although there were no objections from the neighbors and one neighbor spoke in favor of the proposal, the board denied relief, finding that Fanning had not shown hardship related to the soil conditions, shape, or topography of the land or structures and that relief could not be granted without substantial detriment to the public good or nullifying or substantially derogating from the intent and purpose of the ordinance. The board further found that it had been the board's consistent policy to discourage front yard parking absent a compelling case such as substantial hardship, which had not been demonstrated. The judge found that the board suggested that Fanning apply for a special permit waiver from the requirement that he provide a second off-street parking space. Fanning did not appeal from the board's decision.
Fanning next sought a building permit to construct an exterior staircase to the second floor of his unit. The building inspector told Fanning he needed a new variance to make any changes to the addition made possible by the 2011 variance. Fanning took no further action with regard to the building permit.
In 2014, Fanning sought a variance to create a second dwelling unit within his single-family residence and to add an exterior open staircase to the second floor as a second egress. He also sought a special permit to dispense with the requirement that each unit have an off-street parking space. The application identified the width of the lot as "45 [foot] avg" but indicated that fifty feet were required, and identified the side setback as zero, although 8.4 feet were required. Although the dimensional information sheet did not reflect that the proposed staircase would encroach the side yard setback, elsewhere in the application, Fanning stated that "[t]he requested variance of side yard setback is minimal, only two feet, still leaving a 6.5 foot setback from the affected side yard, which does not have a traditional 'neighbor' on that side as the lot abuts railroad tracks." He also suggested that, pursuant to articles 5.24.1 and 5.24.2 of the ordinance, the open staircase could be deemed to be a fire escape which the ordinance allows to encroach into a required yard.
In support of the special permit, the application stated "[t]here is insufficient land at the front of the lot to provide a second off street parking space, and access to the rear of the lot is prevented by the" existing dwelling. He noted that his property is at the end of a townhouse grouping and abuts an active railroad; there is surplus off-street parking in the vicinity; the MBTA Red Line is a fifteen to twenty minute walk; the MBTA bus lines are a five to ten minute walk; the second unit likely will house single, young students or others who would be expected to choose to live without an automobile; and he will seek tenants who do not own a car or who will seek parking in a nearby commercial facility.
According to the judge's findings, this time "several neighbors ... spoke and/or wrote in opposition to Fanning's proposal based largely on parking concerns." The board found that, based on the neighbors' complaints regarding parking issues, Fanning failed to demonstrate that reducing the number of parking spaces would not substantially reduce parking availability for other uses. The board further noted that, although Fanning had identified the location of neighboring parking facilities, he did not support his claims that a prospective tenant could park there. In addition, the board found that Fanning had not met the other special permit criteria (the board essentially parroted the criteria). With regard to the variance, the board found that Fanning had not demonstrated any hardship and "granting relief would be substantially detrimental to the public good and would intrude on a setback in a rather tight neighborhood."
Fanning appealed the denial of his 2014 special permit/variance application to the Land Court pursuant to G. L. c. 40A, § 17. The judge found that Fanning had not needed a variance for his 2011 addition; his lot and structure are conforming; and he did not need a variance for the addition of the proposed staircase or, apparently, to convert the townhouse to two dwelling units. The judge concluded that Fanning could reapply for a building permit for the second dwelling and exterior stairs and ordered the city building inspector to grant the building permit without requiring additional zoning relief. In addition, the judge concluded that Fanning had met the criteria for a special permit eliminating the off-street parking requirement; the board's denial of the special permit was arbitrary and capricious; and no reasonable board could have concluded as they did.
Discussion. The board's decision cannot be disturbed unless, on facts found by the judge de novo, the judge concludes that the board's decision is based on a legally untenable ground or is "unreasonable, whimsical, capricious or arbitrary." Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012) (Shirley Wayside ), quoting from Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 382 (2009) (Wendy's ). "The board is entitled to deny a permit even 'if facts found by the court would support its issuance,' ... [but] [t]he judge nonetheless should overturn a board's decision when 'no rational view of the facts the court has found supports the board's conclusion.' " Shirley Wayside, supra, quoting from Wendy's, supra. When reasons given by the board lack a substantial basis in fact and, in reality, were "mere pretexts for arbitrary action or veils for reasons not related to the purposes of the zoning law," deference is not appropriate. Shirley Wayside, supra, quoting from Vazza Props., Inc. v. City Council of Waltham, 1 Mass. App. Ct. 308, 312 (1973).
The parking special permit. Fanning asserts in his application that he is seeking zoning relief in order to create a second unit in his townhouse. Article 5.26 of the ordinance provides that "[n]o new dwelling unit created by the conversion of an existing dwelling into a greater number of units ... shall be permitted" unless it meets, among other area and open space requirements, the requisite off-street parking for all dwelling units after the conversion. Article 5.26 contains no provision for exception by special permit. Pursuant to article 6.35, however, "[a]ny required amount of parking may be reduced by issuance of a special permit from" the board.
A special permit allowing a reduction in required parking may be granted only if the board "determines and cites evidence in its decision that the lesser amount of parking will not cause excessive congestion, endanger public safety, substantially reduce parking availability for other uses or otherwise adversely impact the neighborhood." Article 6.35.1.[4] In addition, the current article 11.16.2(4) provides that the space per unit parking requirement for townhouse developments may be met by on-street parking if the "special permit granting authority determines that the lack of off street parking for the townhouse development will not unreasonably reduce the quantity of on street parking in the area." Applicants for an exception from off street parking must "submit a report on parking usage and availability in the vicinity of the development with their permit application." Ibid.
The judge, however, found that Fanning only had to comply with the requirements contained in article 11 of the ordinance because it specifically applies to townhouse developments, and the provisions of article 6 are more general. We disagree. The townhouse development is already completed, and the mechanism by which it fulfilled its off-street parking requirements was established years ago with a single parking space on each dwelling unit's front yard. What prompted Fanning to seek relief from the board was not the development of his townhouse, but his desire to convert his single-family unit to a two-family unit. Article 5.26 specifically addresses the conversion of dwellings and requires that off-street parking requirements (here one space per dwelling unit) be met. If not for the broad provision in article 6.35 allowing relief from parking requirements, a variance would have been required. As a result, we are persuaded that the judge erred in concluding the article 6.35 provisions were not applicable.[5]
In considering whether to grant the special permit, the board credited evidence that street parking in the area of Fanning's property was already overcrowded. Fanning, himself, testified that parking on the street was tight because residents of other neighborhoods also parked on his street. The judge did not make a contrary finding. In addition, the board correctly pointed out that Fanning's identification of local lots, where some commuters park, failed to demonstrate that a resident could park there overnight, and, although Fanning indicated that commercial parking was adjacent to his property, and buses and the subway line were nearby, he did not point to any age or other restrictions that would mandate that a renter of his second unit utilize those alternatives to parking a car on the street.
Article 6.35.1 of the ordinance states that consideration of offsite parking availability is appropriate, provided the requirements of 6.23 are satisfied. Article 6.23 provides that, when accessory parking facilities are allowed on land other than the lot on which the use being served is located, the special permit granting authority must be satisfied that binding commitments exist to guarantee that the off-site parking will continue to be available for the period during which the use or uses may be expected to be in existence-as evidenced by a negotiated lease agreement, recorded covenant, or comparable legal interest. Here, instead, Fanning relied on his own observation of 150 vacant spaces in an adjacent parking facility mid-week, along with the proximity to public transportation, and his prediction of the type of tenant his unit would attract. We cannot say the board erred in these circumstances in declining to accept Fanning's assessment of the adequacy of available parking.
The board's decision to deny approval of an additional space in Fanning's front yard is not before us, although we note his assertion on his 2014 application that there is not enough room for a second space. In addition, the fact that the board suggested earlier-at a time when there were no objecting abutters-that Fanning might qualify for a special permit to eliminate the off-street parking requirement, did not bind the board, particularly where, by the time Fanning sought that relief, some of his neighbors did in fact object.
The judge reasoned that a second person living with Fanning could park an automobile on the street and cause the same issue as would be caused by granting the special permit. That is true, of course, for all of the units in the development. Allowing a special permit on those grounds, however, would render the one space per unit requirement meaningless. We see no abuse of discretion in the board's decision not to grant the special permit to eliminate an off-street parking space requirement, given that street parking is already overcrowded and no commitment to off-site parking has been made.
The judge's conclusion that the board put Fanning in an unwinnable situation implies that Fanning was entitled to a decision either allowing a second space in the property's front yard or an exemption from the one space per dwelling unit requirement. That is not the case. Both of those actions require a variance or special permit, and no one is entitled to either a variance or a special permit as of right. Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 559-560 (1954).
Variance. The judge concluded that no variance was required for the original 2011 addition because it was a conforming addition to a conforming structure. As a result, he concluded that the staircase, which he found qualifies as a fire escape and which the ordinance allows to encroach on the setback, did not require a variance. We disagree.
Fanning's application for the 2011 variance indicated that the lot was nonconforming in terms of the side setback and rear width requirements. The judge suggests that, because the side setback was allowed when the townhouse was built, it was a complying structure in 2011, despite the testimony of the commissioner of inspectional services that the townhouse ordinance had changed. Although they are usually waived for individual units in a townhouse development when the development as a whole is approved, when seeking to modify a townhouse, articles 11.15(c), 11.15.1, and 11.15.4 of the ordinance specifically provide that the zoning district's width and yard requirements apply to individual units. As a result, to the extent it was even open to the judge to reconsider the 2011 decision that a variance was required (a decision that was not appealed), there was no basis for the judge's conclusion that the dwelling was conforming when Fanning sought to increase its size by more than twenty-five percent in 2011.[6]
When, as here, a variance is granted, conditioned on construction in compliance with submitted plans, "the variance requires strict compliance with the plans." Lussier v. Zoning Bd. of Appeals of Peabody, 447 Mass. 531, 536 (2006), quoting from DiGiovanni v. Board of Appeals of Rockport, 19 Mass. App. Ct. 339, 346-347 (1985). Even if the proposed staircase does constitute a fire escape and may encroach into the side setback without creating a new nonconformity, it still constitutes additional construction, contrary to the plans submitted in 2011 and therefore requires a new or modified variance. See Lussier, supra at 532, 535-536. That a different section of the ordinance might have allowed Fanning to obtain approval of the 2011 addition by special permit is not relevant once Fanning identified lot nonconformities, elected to proceed with and obtained a variance, and failed to appeal from the variance.[7] See Bjorklund v. Zoning Bd. of Appeals of Norwell, 450 Mass. 357, 362 (2008) (judge did not abuse discretion in refusing to consider plaintiffs' contention on motion for reconsideration that different provision of zoning by-law might exempt property from lot size requirement). As a result, we cannot agree with the judge that Fanning was not required to obtain a new variance, or a modification of the 2011 variance.
There was no error in the board's conclusion that Fanning had not shown hardship. It is well-settled that hardship stemming from an owner's personal financial and even health difficulties, rather than factors which affect the land itself, are not valid bases for a variance. See Sheppard v. Zoning Bd. of Appeals of Boston, 81 Mass. App. Ct. 394, 399 n.8 (2012). "[A]n inability to maximize the theoretical potential of a parcel of land is not a hardship within the meaning of the zoning law." Steamboat Realty, LLC v. Board of Appeal of Boston, 70 Mass. App. Ct. 601, 603 (2007), quoting from McGee v. Board of Appeal of Boston, 62 Mass. App. Ct. 930, 931 (2004). A finding of no hardship is sufficient reason to deny a variance. Ibid.
Fanning tacitly concedes in his brief that his application does not meet the requirements for a variance. Other than repeating his unavailing argument that the 2011 addition complied with zoning requirements, he makes no effort to argue the property actually qualified for a variance in 2014. For all of the foregoing reasons, therefore, we discern no error in the board's denial of Fanning's variance or special permit applications. The judgment is reversed. The matter is remanded for entry of a new judgment affirming the decision of the board and such other orders as may be necessary, consistent with this memorandum and order.
So ordered.
Reversed and remanded.

The application indicated he needed additional space for his model-making and woodworking hobbies. The judge also found that he intended to have his sister move in with him.

At the time of his application, article 8.22.2(c) of the ordinance provided that a special permit for the enlargement of a nonconforming structure may be granted, but only if the enlargement is not in further violation of dimensional requirements and the nonconforming structure will not be increased in area or volume by more than twenty-five percent. Article 8.22.3 provided that all other enlargements of a nonconforming structure required a variance.
Article 11.15(c) of the ordinance provides that modifications of townhouse developments that do not comply with the dimensional standards may be allowed by a special permit issued by the board. The 2011 application, however, made no reference to article 11.

Article 6.35.1 further provides:
"In making such a determination the Board shall also consider whether or not less off street parking is reasonable in light of the following:
"(1) The availability of surplus off street parking in the vicinity of the use being served and/or the proximity of an MBTA transit station.
"(2) The availability of public or commercial parking facilities in the vicinity of the use being served provided the requirements of Section 6.23 are satisfied.
"(3) Shared use of off street parking spaces serving other uses having peak user demands at different times, provided that no more than seventy-five (75) percent of the lesser minimum parking requirements for each use shall be satisfied with such shared spaces and that the requirements of Subsection 6.23 are satisfied ....
"(4) Age or other occupancy restrictions which are likely to result in a lower level of auto usage; and
"(5) Impact of the parking requirement on the physical environment of the affected lot or the adjacent lots including reduction in green space, destruction of significant existing trees and other vegetation, destruction of existing dwelling units, significant negative impact on the historic resources on the lot, impairment of the urban design objectives of the city as set forth in Section 19.30 of the Zoning Ordinance, or loss of pedestrian amenities along public ways.
"(6) The provision of required parking for developments containing affordable housing units, and especially for developments employing the increased FAR and Dwelling unit density provisions of Section 11.200, will increase the cost of the development, will require variance relief from other zoning requirements applicable to the development because of limitations of space on the lot, or will significantly diminish the environmental quality for all residents of the development.
"For a project seeking a reduction in required off-street parking for residential uses, a Parking Analysis shall be required as part of the Special Permit Application as set forth in Section 6.35.3."
Article 6.35.32 provides that "[w]here a Parking Analysis is specifically required by any provision of this Zoning Ordinance, the proponent shall first consult with the Traffic, Parking and Transportation Department to determine the scope and methodology of such an analysis. The results of the Parking Analysis shall be included in any Special Permit Application for the project." Article 6.35.33 contains criteria for residential projects some or all of which are to be included as determined by the city traffic, parking and transportation department.

The judge found that the board also relied on the absence of a traffic analysis in denying the special permit. Although the board's decision does not comment on the absence of a formal traffic analysis, Fanning testified that one of the board members told him at the hearing that one of the reasons his application was rejected was because he did not submit a traffic study. The judge found that Fanning's report of parking availability was sufficient and Fanning did not need to conduct the analysis required by article 6.35.33 because what he provided satisfied the requirement contained in article 11. As noted above, Fanning, in fact, was required to satisfy article 6 in order to obtain relief from the parking requirement for conversion of one dwelling unit to two. Fanning testified that he did not conduct a parking study because he did not think it was necessary for a one-space reduction in parking. However, the ordinance requires consultation with the traffic, parking and transportation department to determine the scope and methodology of any required analysis. Article 6.35.33 contains criteria for a parking analysis for residential projects, some or all of which are to be included as determined by the traffic, parking and transportation department. It was therefore not Fanning's determination of whether a parking study was necessary that is required by the ordinance. As a result, the board could have denied the special permit because the application was incomplete, if for no other reason, Fanning, at a minimum, having failed to consult with the department.

We conclude the judge correctly rejected the board's argument that, pursuant to Sisters of the Holy Cross of Mass. v. Brookline, 347 Mass. 486, 494-495 (1964), Fanning failed to preserve his argument that the board erred in requiring him to obtain a variance in 2014.

It is true that article 11.15(c) provides that modifications of townhouses that do not comply with the dimensional standards may be allowed by a special permit issued by the board. Fanning did not seek zoning relief under article 11.15(c). Although the chairman was perhaps correct that all Fanning needed in 2011 was a special permit, we will not disturb the variance issued upon the plaintiff's request.