FRANK LOMELIS vs. BOARD OF APPEALS OF MARBLEHEAD. December 29, 1983. *Zoning*, Board of appeals: decision; Nonconforming use or structure.

Marblehead has a zoning by-law (§ VI. 1. C) which permits reconstruction of a nonconforming building damaged or destroyed by fire or

other accidental cause. Although the parties have discussed a series of building permits and board of appeals proceedings, their controversy is reducible to a single question: Did Lomelis's house fall down accidentally, thus entitling him as matter of law to a building permit to rebuild it?

We rehearse the salient facts found by the trial judge, with some supplement from the record. Lomelis owned a seasonal dwelling[1] which he desired to improve for year-round occupancy. To this end Lomelis, through a contractor, applied for a building permit on September 13, 1978. The building inspector issued a permit, no. 1534, on September 20, 1978. On the basis of experience with flood tides which had accompanied the blizzard of February, 1978, the inspector conditioned the permit on all living and utility areas being located thirteen feet above mean high tide. In practical effect this would result in a building five to ten feet higher than the original structure and with a slight variation from the preexisting perimeter. Work began in October and proceeded at a leisurely pace. On a day in January, 1979, with reconstruction of the foundation substantially complete, workmen were raising an exterior wall so as to remove the old sill and bring the new foundation to the required grade. Suddenly the wind increased. The workers lost control of the elevated wall and it blew into the house. This set off a chain reaction which brought the other walls down.

Following a complaint by neighbors (the Careys) that the workmen had torn the structure down, the building inspector revoked the building permit without notice and hearing. Lomelis remonstrated to the building inspector and submitted affidavits about the accidental nature of the building collapse. Persuaded, the building inspector issued a second permit.[2] That action was appealed by the Careys to the board of appeals, which ordered revocation of the second permit because the application for it was unsupported by plans. The trial judge, on conflicting evidence, found that the collapse had been accidental. On the strength of that finding, he reasonably ruled that the second permit was no more than a restoration of the first, which had been improvidently revoked. The board of appeals proceeding, therefore, was a shadow play — "of no effect or consequence," the judge wrote.

Whatever view may eventually have been taken of the board's action, Lomelis's immediate response was pragmatic: (1) he made a new application for a building permit, accompanied by plans showing the dimensional variations spawned by the post-blizzard requirements;

[1] Title to the land on which the house was situated was vested in Bessom Associates, Inc. As a stockholder of that corporation, however, Lomelis had a proprietary right to maintain and occupy the dwelling house on Lot No. 21 of a 13.2 acre tract owned by Bessom.

[2] This permit was applied for on November 19, 1979. The record does not disclose the date on which the permit issued.

and (2) he applied for a special permit[3] to add an eight-foot porch, an eight-foot roof extension, and a six-inch extension of a chimney. The building inspector then issued a third permit, and the Careys again appealed to the board of appeals. Their protest and Lomelis's request for zoning relief were heard simultaneously. The board decided both matters adversely to Lomelis on the ground that the collapse of his building was not an accident and that, therefore, he had no right to restore it. Lomelis appealed under G. L. c. 40A, § 17. A judgment entered in the Superior Court that the third permit was lawful and in full force and effect and that Lomelis could proceed to build under it. From that judgment, the neighboring Careys appealed. We affirm.

1. The Careys misconceive the nature of the deference to be shown by a reviewing court to local action of a board of appeals. To be sure, the discretionary aspects of a board of appeals decision, i.e., whether on facts which would support zoning relief it shall be granted, are a local matter with which the board, so long as it does not act arbitrarily, "can deal understandingly . . . . A judge of a State wide court, perhaps spending only a few days or weeks in a particular locality, is hardly a suitable tribunal for such purposes." *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557-558 (1954). *Geryk* v. *Zoning Appeals Bd. of Easthampton,* 8 Mass. App. Ct. 683, 684-685 (1979).

In the instant case, as the parties have presented it, there is no play for the exercise of discretion. The questions on review are of fact and law. As to matters of fact, it is the duty of the reviewing court to receive evidence and to find facts without according any weight to the facts found by the board. *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953). *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 292 (1972). *Garvey* v. *Board of Appeals of Amherst,* 9 Mass. App. Ct. 856 (1980). The determinative facts, which the trial judge found, were that Lomelis's house blew down accidentally and that the changes in perimeter and those worked by the extensions were minor. The trial judge's findings of fact are, of course, accepted unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *C.C.&T. Constr. Co.* v. *Coleman Bros. Corp.,* 8 Mass. App. Ct. 133, 135 (1979). We think the judge's findings are right and, indeed, on the sparse record served up by the Careys, there is no basis for concluding otherwise.

We also think the judge was correct in concluding that the first permit was unlawfully revoked and that the next two permits should be viewed as reinstatements of the original one. The basis for revocation of the

---

[3] The board, in its decision, speaks of a special permit. The Lomelis application speaks of a variance. The parties have not provided us with those portions of the Marblehead zoning by-law from which we might have been able to determine the appropriate relief.

first permit was a fact found not to exist, viz., that Lomelis or his agents had intentionally demolished his house. The appellants have not suggested that the first permit was otherwise vulnerable.

It remains to consider whether the deviations in perimeter and the extensions were within permissible bounds for a nonconforming use. The only changes apparent from the record are those which the inspector required to guard against flood tide. As in *Berliner* v. *Feldman*, 363 Mass. 767, 769-770 (1973), the by-law in question provided for reconstruction of buildings if damaged or destroyed. The perimeter and foundation adjustments appear "reasonably adapted to the original use and do not constitute a change in the original nature and purpose of the undertaking." *Id.* at 775. Compare *Goldman* v. *Dennis*, 375 Mass. 197, 199 (1978); *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 215 (1982). The roof, panel, and chimney extensions are adverted to in the judge's findings, but we have been furnished no plans which would enable us to appraise their relationship to the original house, to parcel lines, and to neighboring property. See *Kunen* v. *First Agricultural Natl. Bank*, 6 Mass. App. Ct. 684, 689-691 (1978). In the circumstances, there is no cause to disagree with the trial judge's conclusion that the building authorized by the third permit is not an improper expansion of the nonconforming use.

*Judgment affirmed.*

*Roger Michael Carey* for the defendant.
*Robert W. Crowley* for the plaintiff.