GEORGE H. FITZSIMONDS & another[1] *vs.* BOARD OF APPEALS
OF CHATHAM.

Barnstable. September 12, 1985. — October 22, 1985.

Present: GRANT, KAPLAN, & DREBEN, JJ.

*Zoning*, Board of appeals: decision; Special permit; Nonconforming use
or structure.

Where there was some question whether a cottage in a condominium vacation
colony was a single-family structure for purposes of the "except" clause
of G. L. c. 40A, § 6, the owners of the property, seeking to add a
second story to the cottage, could properly combine in a proceeding
before a local board of appeals a contention that the alteration was
validated by the "except" clause with a request, failing that contention,
that the board grant a special permit for the alteration. [55-56]
In denying a special permit for the addition of a second story to a cottage
in a vacation condominium, a zoning board of appeals erred in failing
to consider whether the cottage was a single-family structure for purposes
of the "except" clause of G. L. c. 40A, § 6, which permits certain
changes to such structures as of right, and in basing its conclusion under
the special permit clause of § 6, that the addition would be "substantially
more detrimental than the existing nonconforming use to the neighbor-
hood," on the reason that, if the present application were granted, it
would be difficult in the future to refuse the applicants permission for
year-round occupancy of the cottage. [56-58]

CIVIL ACTION commenced in the Superior Court Department
on March 31, 1981.

The case was heard by *John J. Irwin, Jr.,* J.

*Russell N. Wilkins* for the plaintiffs.

*Frank J. Shealey,* Town Counsel (*Craig S. Johnson* with
him) for the defendant.

KAPLAN, J. The plaintiffs George and Delores Fitzsimonds,
husband and wife, owners of a summer house in South Chatham,

---

[1] Delores Fitzsimonds, his wife.

appeal from a judgment of the Superior Court which affirms a decision of the defendant board of appeals of Chatham (board) refusing them a special permit to make certain alterations of the house. We vacate the judgment so that the matter may be reconsidered by the board.

1. *The case.* The plaintiff's house was originally one of ten similar units of a "cottage colony" bounded by Sea Shells Drive and Sea Mist Lane, South Chatham, comprising a total area of some 80,000 square feet. Evidently the colony was owned by one person or entity which used to rent the cottages for summer occupancy. On March 13, 1976, the colony was "condominiumized" pursuant to G. L. c. 183A, and on November 9, 1976, the plaintiffs bought the particular cottage for a stated price.[2] Under the deed, the plaintiffs secured title to the one-story, single-family, frame structure and its underlying land (the "footprint") plus a ten percent undivided interest in the "common areas and facilities" of the former colony (the areas other than the footprints of the ten units). By the terms of the deed, the units are subject to the restriction that they are intended "for recreational and vacation uses, and may not be used as permanent year-round residences."[3]

The house is nonconforming (as are the others in the condominium). Town by-law 1.46, enacted in 1978, states with respect to a cottage colony converted to a condominium that "the lot upon which each condominium unit is located" shall have a "[l]ot area, minimum" of 15,000 square feet if the lot is "not provided with either public water or sewer."[4] The plaintiffs' lot has neither. By-law 1.46 has other requirements such as minimum lot frontage, minimum front and rear yard, minimum side yard, roadway access, off-street parking space, and

[2] The condominium is called "Standish Village" and the plaintiffs' house "John Alden."

[3] The units are also subject to the provisions of the master deed and the condominium trust (including the trust by-laws), but neither instrument was offered in evidence.

[4] Nonconformity is evident even if 80,000 is arbitrarily divided by ten, without regard to any distinction between fee ownership and partial undivided ownership.

approval of the sewage disposal system by the board of health. Although the present record lacks detail, we are to assume that there is nonconformity with respect to some of these requirements if only because of the nature of the plaintiffs' ownership.

In August, 1980, the plaintiffs applied to the local building inspector for a permit to add (in effect) a livable second story to their house. More particularly, they proposed to raise a dormer — to swing it up as if hinged, as counsel put it — and enlarge what was probably an attic crawl space to encompass a living area of 320 square feet, with, in addition, a deck of 78 square feet. These additions compare with a living area of 789 square feet on the floor below. Starting with three bedrooms, bath, living room, and kitchen, on the one floor, the proposed rearrangement would yield two bedrooms, bath, living room, dining room, and kitchen on the first floor, and one bedroom, bath, den, and deck on the second.

The building inspector granted the permit on August 25, 1980. However, a neighbor protested, and when the alterations were perhaps 80 to 90 percent complete at a cost of $6,105.30, the building inspector issued a stop-work order, and by letter of October 26, 1980, informed the plaintiffs that in his opinion they must apply to the board for a special permit. Similar stop-work orders and letters were sent to two other house owners in the condominium.

The plaintiffs applied to the board, which, at an open meeting on February 25, 1981, following a public hearing, unanimously denied the request for a special permit. By letter of March 11, 1981, the board set out its reasons. Upon the plaintiffs' "appeal" under G. L. c. 40A, § 17, a judge of the Superior Court upon findings and rulings held the board's action to be not arbitrary or capricious or in excess of its authority.

2. *Statutory framework.* The relevant provisions of The Zoning Act are the first two sentences of G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3, reproduced as an appendix to this opinion.[5] These are as difficult and infelicitous as other

---

[5] By-laws 1.41 and 1.42 regarding nonconformity appear to be glosses on the statute and need not be separately considered.

language of the act recently reviewed,[6] but we think it is possible to say the following. An alteration, reconstruction, extension, or structural change of a nonconforming single-family or two-family residential structure is legitimated under the second "except" clause of the first sentence if it "does not increase the nonconforming nature of said structure"; otherwise (as occurs in certain events in regard to changes of other structures referred to in the language preceding the "except" clause), it must be submitted to the special permit procedure of the second sentence for a determination by the board of the question whether it is "substantially more detrimental than the existing nonconforming use to the neighborhood."

There can be argument that the present case does not fit the "except" clause at all because, for purposes of that text, the structure is still a cottage, or at least not a single-family structure, which ordinarily assumes ownership of some verge of land, with definite bounds, beyond the footprint, and also assumes (though more doubtfully) a right to occupancy year-round. From another angle there can be argument that, if the plaintiffs intended to insist that their alteration was within the "except" clause, they must refrain from applying for a special permit, and await or undertake independent litigation. However, we think it right to proceed on the basis that the plaintiffs' house is a single-family structure in relation to the "except" clause, and that the plaintiffs' application to the board may (and as a matter of procedural economy should) combine a contention that the alteration is validated by the "except" clause with a request (failing that contention) that the board grant a special permit after considering "detrimental" effect.

3. *Inadequate treatment by the board.* In this view (to repeat), the board should first have considered whether the alteration fit the "except" clause and, if the answer was no, gone on to the question of "detriment." But, judging by the board's letter of March 11, 1981, it did not address itself to the first question, and made a dubious approach to the second.

---

[6] See *O'Kane* v. *Board of Appeals of Hingham*, 20 Mass. App. Ct. 162 (1985).

(a) The plaintiffs urge as matter of law that the "except" clause applies; that the "nonconforming nature" of their structure relates to density, as expressed in the minimum lot size requirement of by-law 1.46, and that this "nature" cannot be considered "increased" when the alteration reaches upward rather than laterally, with the structure remaining single-family, although much enlarged. We think it would be unwise for the court to decide this question of the application of the "except" clause as if it presented a nice legal point upon a motion to dismiss an action for failure to state a claim. A local board of appeals brings to the matter an intimate understanding of the immediate circumstances, of local conditions, and of the background and purposes of the entire by-law; and so, at least in the first instance, the board's administrative view is valuable and is wanted. Cf. *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486-488 (1979); *Geryk* v. *Zoning Appeals Board of Easthampton*, 8 Mass. App. Ct. 683, 684-685 (1979).

(b) The board went immediately to the issue of "detriment".[7] The reasons it assigned are unsatisfactory. It interjected as a factor that, if the present application for a special permit were granted, it would be difficult in the future to refuse the plaintiffs permission for year-round occupancy.[8] We think the board erred when it took into account, as bearing upon present decision, a putative problem to be faced in the indefinite future upon now uncertain facts. See *Mahoney* v. *Board of Appeals of Winchester*, 344 Mass. 598, 601 (1962). On the other hand, we venture to think that the board, if it thought it helpful, would be entitled to consider the present application as a

---

[7] For decisions on the application of the second sentence of § 6 to other facts, see *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205 (1982); *Building Inspector of Groton* v. *Vlahos*, 10 Mass. App. Ct. 890 (1980); *Sullivan* v. *Board of Appeals of Harwich*, 15 Mass. App. Ct. 286 (1983); *Lomelis* v. *Board of Appeals of Marblehead*, 17 Mass. App. Ct. 962 (1983). Compare *Building Inspector of Seekonk* v. *Amaral*, 9 Mass. App. Ct. 869 (1980).

[8] The plaintiffs have not disputed the board's apparent assumption that permission would be required.

bellwether of other applications, since stop-work orders were issued to two other houseowners. The board spoke of several factors besides lot size — summer parking problems, sewage difficulties, abutter objections to increase of "people density" — but it is hard to say whether these comments envisaged prospective year-round utilization or were considered pertinent even if occupancy remained limited to the summer season.[9]

The foregoing discussion also serves as an answer to the findings and rulings of the judge below.

The judgment of the Superior Court is vacated with directions to that court to remand the matter to the board for reconsideration.

*So ordered.*

APPENDIX.

"Section 6. Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting

[9] The plaintiffs contend that they are entitled in any event to the special permit because of their expenditure in reliance on the building permit, with the prospect of further expenses if they must restore the structure. They cite *Marblehead* v. *Deery*, 356 Mass. 532 (1969), but that case is a special and singular example of circumstances warranting a limitation, reflecting equitable considerations, of the principle that forbids estopping a municipality because of the act of one of its officials.

authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."