JUSTIN E. GALE & others[1] vs. ZONING BOARD OF APPEALS OF GLOUCESTER & another.[2]

No. 10-P-1536.

Suffolk. May 10, 2011. - September 2, 2011.

Present: KANTROWITZ, SMITH, & WOLOHOJIAN, JJ.

*Zoning,* Person aggrieved, Special permit, Variance, Nonconforming use or structure.

In a civil action brought in the Land Court by plaintiff landowners appealing from a decision of the zoning board of appeals of Gloucester (board), which granted a special permit and a variance pursuant to G. L. c. 40A, § 6, to the defendant trustee, the owner of neighboring property, allowing the reconstruction of a pre-existing nonconforming structure on the defendant's property, the judge correctly determined that the plaintiffs had standing to appeal, where, due to a right of way over the plaintiffs' property, the defendant's plan to construct a year-round residence on neighboring property would have a particularized impact on the use of that right of way in the future, especially during the construction phase of the new residence [334-335]; further, the judge correctly concluded that the board's finding under G. L. c. 40A, § 6, was sufficient to allow reconstruction, and that, as a matter of law, a variance was not required [335-338].

CIVIL ACTION commenced in the Land Court Department on December 30, 2008.

The case was heard by *Charles W. Trombly, Jr.,* J., on a motion for summary judgment.

*Michael K. Terry* for the plaintiffs.

*Kevin M. Dalton* for George B. Foote, Jr.

*Suzanne P. Egan* for zoning board of appeals of Gloucester.

SMITH, J. The plaintiffs, Justin E. Gale, Henry Ware Gale, Peter Peabody Gale, Benjamin Winsor Gale, and Emily Anne

[1]Henry Ware Gale, Peter Peabody Gale, Benjamin Winsor Gale, and Emily Anne Gale.

[2]George B. Foote, Jr., trustee of the 1988 revocable trust indenture of Anna Putnam Foote.

Gale (the Gales), appeal from the entry of summary judgment dismissing their appeal from a decision of the zoning board of appeals of Gloucester (board). That decision granted a special permit and a variance to the defendant trustee, George B. Foote, Jr., allowing the reconstruction of a pre-existing nonconforming structure on the land he held in trust.

1. *Background.* The following undisputed facts are taken from the summary judgment record. The Gales are owners of property located at 17 Squam Rock Road in Gloucester. Foote, as trustee, is the owner of the neighboring property, 19 Squam Rock Road, which is held in trust for the members of the Foote family (the Footes). At one time, the two properties comprised a single lot owned by Lyman Gale, an ancestor of both the Footes and the Gales. When Lyman Gale died in 1961, the property was divided into two lots. One lot was conveyed to Lyman Gale's son Winsor Gale, and the other was conveyed to Lyman Gale's daughter Priscilla Smith. Winsor Gale's lot is now owned by the Gales (Gale property), and Smith's lot is held in trust for the benefit of the Footes (Foote property). At the time the original lot was divided, a right of way was created over the Gale property onto the Foote property.

The properties are located in an R-2 residential zoning district, and are situated on the coastal peninsula of Annisquam, on Cape Ann, with ocean views of Ipswich Bay. The Gale property is L-shaped, essentially surrounding the Foote property on two sides, and contains a 3,000 square foot, two-story residential structure and a smaller accessory structure. The Foote property contains a 1,000 square foot seasonal cottage, with access from Squam Rock Road via the right of way over the Gale property. The Foote property does not conform to the requirements of the Gloucester zoning ordinance (ordinance) regarding lot area, side yard setback, front yard setback, and rear yard setback. It is undisputed that these nonconformities predate the enactment of the ordinance, rendering the Foote cottage a pre-existing nonconforming structure.

In 2008, the Footes sought to replace the cottage with a larger year-round residence. The plan for the new residence called for a 2,700 square foot, two-bedroom structure that would exceed the bounds of the existing footprint. The new residence was

designed and situated on the lot to facilitate the access and residence of Anna Foote, the eighty-seven year old matriarch of the Foote family.

To reconstruct the residential structure, George Foote petitioned the board for a special permit pursuant to G. L. c. 40A, § 6, and a variance pursuant to § 2.4.5(d) of the ordinance. Under the relevant portion of G. L. c. 40A, § 6, first par., inserted by St. 1975, c. 808, § 3, a pre-existing nonconforming structure or use may be changed, extended, or altered if it is not "substantially more detrimental" to the character of the neighborhood than the original structure or use, as determined by the local permit granting authority. Section 2.4.5(d) of the ordinance provides that "unless authorized by a variance from the Board of Appeals . . . , those portions of the replacement structure that constitute an increase in the footprint of the original structure [must] comply with all provisions of this ordinance, and in particular the dimensional requirements of Section 3.2."

Following review of the proposed plan, the board granted the Footes a special permit, finding that "even if there is an intensification of any nonconformities, the house as reconstructed . . . will not be substantially more detrimental to the neighborhood than the existing nonconforming structure . . . ." As to the requested variance, the board noted that "literal enforcement of the zoning ordinance would result in personal and financial hardship for the Petitioner" due to the lot's narrowness, steep grade, and scattered ledge outcroppings. It also noted that these hardships do not generally affect other properties in the neighborhood and that the proposed structure would be appropriate in its setting. The board accordingly granted the requested variance from the requirements of the ordinance.

Following the board's decision, the Gales appealed to Land Court, pursuant to G. L. c. 40A, § 17, alleging that the variance was granted in error, as the soil conditions, topography, and shape of the lot were not extraordinary, and because lot shape is not a proper legal consideration in determining whether a variance should be granted. The Gales also claimed that the decision was based on incorrect frontage figures and misleading plans. The Footes responded, in part, by challenging the Gales' standing to appeal the board's decision.

On the Gales' motion for summary judgment, a judge of the Land Court affirmed the board's decision. As to standing, the judge observed that the Gales, as immediate abutters, enjoy a presumption of being persons aggrieved. He then concluded that the Gales have a legal interest in the proceedings due to the right of way over their property, which may "increase in year-round use, as well as construction of the proposed structure, which may affect [the Gales'] enjoyment of their land." The judge also noted the close proximity of the two residences, listing as particular concerns the Gales' property value, the privacy and enjoyment of their property, and their enjoyment of light and air, specifically their ocean views. Having found standing on the part of the Gales, the judge held that a finding under G. L. c. 40A, § 6, would have been sufficient to allow reconstruction of the structure, and that "as a matter of law, a variance was not required." In the alternative, the judge determined that the variance was validly granted.

The Gales now appeal to this court, arguing that the judge erroneously concluded both that a variance was not required, and that, if it were required, the variance was properly granted. On appeal, the Footes again challenge the Gales' standing to appeal. The board also filed a brief, maintaining that § 2.4.5(d) of the ordinance was properly enacted, and that the city of Gloucester has the authority to require certain variances under that section of the ordinance. The board also argues that the variance was properly granted in this case.[3]

2. *Discussion.* We review a grant of summary judgment de novo, to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *District Attorney for the N. Dist.* v. *School Comm. of Wayland,* 455 Mass. 561, 566 (2009), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). In doing so, we "may consider any ground supporting the judgment." *Ibid.,* quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co., supra.*

---

[3]The board did not file an appeal in this case, but nevertheless filed a brief. At oral argument, the panel allowed the board to present its arguments on appeal despite this procedural deficiency.

a. *Standing.* We begin our analysis by briefly addressing the issue of standing. General Laws c. 40A, § 17, as amended through St. 2002, c. 393, § 2, provides that "[a]ny person aggrieved by a decision of the [zoning] board of appeals . . . may appeal to the land court department . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk." An abutter to property on which another is allegedly acting in violation of a local by-law or ordinance is presumed to be an "aggrieved" person with standing to contest a claimed violation. G. L. c. 40A, § 11. See *81 Spooner Road, LLC* v. *Zoning Bd. of Appeals of Brookline,* 78 Mass. App. Ct. 233, 241 (2010). The Gales fall into this category; their presumptive standing must be effectively rebutted by evidence offered by the Footes. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719, 721 (1996). "Once the presumption is rebutted, the burden rests with the plaintiff to prove standing [i.e., aggrievement], which requires that the plaintiff 'establish — by direct facts and not by speculative personal opinion — that his injury is special and different from the concerns of the rest of the community.' " *Standerwick* v. *Zoning Bd. of Appeals of Andover,* 447 Mass. 20, 33 (2006), quoting from *Barvenik* v. *Aldermen of Newton,* 33 Mass. App. Ct. 129, 132 (1992).

We agree with the judge's determination that the Gales have standing to appeal under G. L. c. 40A, § 17. As the judge noted, due to the right of way over the Gale property, the Footes' plan to construct a year-round residence would have a particularized impact on the use of that right of way in the future, especially during the construction phase of the new residence. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 722 (abutter's concern of increased traffic and reduced parking conferred standing); *Bedford* v. *Trustees of Boston Univ.,* 25 Mass. App. Ct. 372, 376-377 (1988) (same).[4]

b. *Special permit.* As noted, the board granted the Footes a

---

[4]In reaching our conclusion, we note that the Supreme Judicial Court's recent decision in *Kenner* v. *Zoning Bd. of Appeals of Chatham,* 459 Mass. 115 (2011), is not to the contrary. In that case, the court held that the plaintiffs did not have standing because they had failed to show that the increased height of a proposed new neighboring house would have more than "a de minimis impact on the [plaintiffs'] view of the ocean." *Id.* at 123. Here,

special permit to reconstruct the residence on their property pursuant to G. L. c. 40A, § 6, first par., which provides in relevant part:

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun . . . , but shall apply to any change or substantial extension of such use, . . . , to any reconstruction, extension or structural change of such structure . . . except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming [structure or][5] use to the neighborhood."

The permit in this case was granted following a determination by the board, pursuant to the second sentence of the statute, that the new residence would not be substantially more detrimental than the existing nonconforming structure to the neighborhood.[6] See *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 56 (1985). The Gales do not challenge that finding, but instead argue that the local requirement of seeking a variance pursuant to § 2.4.5(d) of the ordinance, in addition to the G. L. c. 40A, § 6, finding, is not precluded by the language of the statute. We disagree.

In resolving this dispute, we are again called on to interpret the "difficult and infelicitous" language of the first two sentences of G. L. c. 40A, § 6, as they pertain to single or two-family residential structures. *Fitzsimonds* v. *Board of Appeals of*

---

although the judge did rely, in part, on the Gales' claim of a loss of air and light, our decision is based on other factors, and we need not address the issue of lost ocean views.

[5]See *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 21 (1987) (supplying necessary words to language of statute).

[6]It is undisputed that the proposed reconstruction would either increase the existing nonconformities or cause new nonconformities.

*Chatham, supra* at 55. The Supreme Judicial Court, in the concurring opinion in *Bransford* v. *Zoning Bd. of Appeals of Edgartown,* 444 Mass. 852, 857-859 (2005) (Greaney, J., concurring) (hereinafter *Bransford*), discussed the interpretive framework set out by this court in *Fitzsimonds, supra,* and *Willard* v. *Board of Appeals of Orleans,* 25 Mass. App. Ct. 15, 21 (1987), and later applied in *Goldhirsh* v. *McNear,* 32 Mass. App. Ct. 455, 460 (1992), and *Dial Away Co.* v. *Zoning Bd. of Appeals of Auburn,* 41 Mass. App. Ct. 165, 170-171 (1996). That framework provides that under the second "except" clause of the first paragraph of the statute, as concerns single or two-family residential structures, the permit granting authority must first "identify the particular respect or respects in which the existing structure does not conform to the present by-law and then determine whether the proposed alteration or addition would intensify the existing nonconformities or result in additional ones. If the answer to that question is in the negative, the applicant will be entitled to the issuance of a special permit." *Bransford, supra* at 858, quoting from *Willard* v. *Board of Appeals of Orleans, supra* at 21-22. If the answer is in the affirmative, a finding of no substantial detriment under the second sentence is required. *Ibid.,* quoting from *Willard* v. *Board of Appeals of Orleans, supra.*[7]

This two-part framework does not include application of a local by-law or ordinance as an additional step when proceeding to the no substantial detriment finding under the second sentence. That finding stands alone as sufficient to proceed with the proposed project, if the permit granting authority deems that no substantial detriment will result from the extension or alteration. This conclusion is in keeping with special treatment explicitly afforded to single or two-family residential structures under the statute. Thus, we hold that the board's finding in this case was all

[7]The concurrence in *Bransford* discussed this framework in the context of a case involving a proposed reconstruction of a nonconforming single-family residence that conformed to all the dimensional requirements of the local by-law except lot size. The primary issue raised was whether the proposed reconstruction could increase the nonconforming nature of the structure due to its location on an undersized lot. *Bransford, supra* at 859. The question was answered by the concurrence in the affirmative. *Ibid.* Thereafter, a majority of the court in *Bjorklund* v. *Zoning Bd. of Appeals of Norwell,* 450 Mass. 357, 358 (2008), adopted the reasoning and result reached by the concurrence in *Bransford.*

that was required; no variance under the ordinance was needed to proceed with the proposed reconstruction.[8]

The Gales' citation to *Rockwood* v. *Snow Inn Corp.*, 409 Mass. 361 (1991), does not change the result. The court in *Rockwood* noted: "Indeed, even as to a single or two-family residence, structures to which the statute appears to give special protection, the zoning ordinance or by-law applies to a reconstruction, extension, or change that 'would intensify the existing nonconformities or result in additional ones.' " *Id.* at 364, quoting from *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. at 22.[9] Although the cited language would superficially seem to require adherence to the ordinance in this case, *Rockwood* involved the granting of a special permit under § 6 to a *commercial* structure. Therefore, the second except clause of the statute was not relevant to the result reached, and the quoted language is dicta outside the context of commercial cases.[10] Further, the concurring opinion in *Bransford* neither cited *Rockwood* for this proposition nor included such a requirement in the framework it discussed. *Bransford, supra* at 858-859. Rather, as we have observed, *Bransford* holds that exterior alterations or reconstructions of single or two-family residential structures that increase or intensify any pre-existing nonconformities may be authorized by means of a finding of no substantial detriment under the second sentence of the first paragraph of § 6. *Ibid.*

*Judgment affirmed.*

[8]Because the judge correctly concluded that the variance was unnecessary, so much of the board's decision as purported to grant it was a nullity. We accordingly express no view on the judge's comment regarding the grounds justifying the variance itself.

[9]Although the court cited *Willard*, that case did not hold that a local ordinance or by-law applies to a reconstruction, extension, or change to a single or two-family residential structure subject to a no substantial detriment finding. Rather, the quoted language is taken from text establishing the interpretive framework later adopted in *Bransford, supra* at 858-859.

[10]Likewise, those cases "indicat[ing] that nonconforming uses may be changed or substantially extended only where the local ordinance or by-law specifically authorizes those practices" are inapposite. *Titcomb* v. *Board of Appeals of Sandwich*, 64 Mass. App. Ct. 725, 729 (2005), quoting from Bobrowski, Massachusetts Planning Law § 6.04[A] (2d ed. 2002). Although § 6 concerns both structures and uses, the analyses involving the two are necessarily separate and distinct. See *Willard* v. *Board of Appeals of Orleans, supra* at 21 n.9.