SARA DEADRICK[1] & others[2] *vs.* ZONING BOARD OF APPEALS OF CHATHAM & others.[3]

No. 13-P-1264.

Suffolk. April 2, 2014. - June 25, 2014.

Present: GRASSO, GREEN, & FECTEAU, JJ.

*Zoning,* Nonconforming use or structure, Special permit, Variance, By-law, Appeal, Board of appeals: decision. *Practice, Civil,* Variance, Zoning appeal.

This court concluded that the provisions of the first and second sentences of G. L. c. 40A, § 6, together, allow extension of existing nonconformities on a showing of no substantial detriment to the neighborhood, but require a variance for the creation of any new nonconformity; accordingly, in a civil action brought in the Land Court challenging the grant of a special permit by the defendant town zoning board of appeals (board) to the defendant property owners to reconstruct a pre-existing nonconforming structure on a nonconforming lot in a manner that would maintain the same nonconformities but also exceed the maximum allowable height due in significant part to Federal Emergency Management Agency (FEMA) regulations requiring reconstruction on pilings above the 100-year flood elevation, remand to the board was required to determine the applicability of a provision of the town zoning bylaw that exempted certain structures from otherwise applicable height restrictions if FEMA regulations required the additional height. [543-553]

CIVIL ACTION commenced in the Land Court Department on December 31, 2007.

Following review by this court, 80 Mass. App. Ct. 1104 (2011), the case was heard by *Alexander H. Sands, III,* J., on motions for summary judgment, and a motion for reconsideration was heard by him.

*Daniel P. Dain* for Robert Jeffrey Chandler & another.

*Peter S. Farber* for the plaintiffs.

---

[1]Individually and in her capacity as executor of the Estate of Mary Ann Hall Deadrick.

[2]Stuart Hall Deadrick and Spencer Hall Deadrick.

[3]Robert Jeffrey Chandler and Jayne Kerry Chandler.

FECTEAU, J. The defendants, Robert Jeffrey Chandler and Jayne Kerry Chandler (collectively the Chandlers), appeal from the entry of summary judgment by a judge of the Land Court that reversed a decision of the zoning board of appeals of Chatham (board). The board had granted the Chandlers a special permit allowing them to reconstruct a pre-existing nonconforming structure on their nonconforming lot. In reversing the board's decision, the judge determined that because the proposed new structure's increased height created a new, additional nonconformity, distinct from the pre-existing dimensional and coverage nonconformities, a variance was required. We agree with the judge's decision that a variance would be required if the proposed increase in height constitutes an additional nonconformity not otherwise exempted by the town by-law. However, we also conclude that the judge erroneously concluded that the board had determined that the Chandlers' project is ineligible for the exemption from certain height limits created by § IV.A.3 of the Chatham bylaw.[4] Consequently, we vacate the entry of summary judgment and remand the matter for further proceedings before the board.

1. *Facts.* The following undisputed facts are taken from the summary judgment record. On July 1, 2005, the Chandlers purchased property, located at 24 Windmill Lane in Chatham, containing a single-family home (old structure). The old structure was built in approximately 1929 and is located within a residential R-40 district and in a coastal conservancy district.[5] The old structure is 19.2 feet high above grade, and contains 2,161 square feet of living space. The Chandlers' property is nonconforming as to lot size and building coverage, and contains

_____

[4] As we discuss below, if the project is eligible for the exemption created by § IV.A.3 of the bylaw, it would not create a new nonconformity and, hence, would not require a variance.

[5] Section IV.A.3 of the bylaw defines the coastal conservancy district as all land delineated in a 100-year flood plain, in which the Chandler property is located. Pertinent to the present case, the section also provides:

"Structures shall not exceed twenty feet (20 feet) in height. Provided there is no expansion, those dwellings which existed prior to January 16, 1992 and are required by the Building Inspector to be elevated in accordance with FEMA regulations, shall not be required to conform to the twenty (20 foot) height restriction."

additional dimensional nonconformities with respect to its frontage, front yard setback, and side yard setback.

In November, 2007, the Chandlers filed an application for a special permit seeking to raze the old structure and replace it with a new structure. The new structure, as proposed, will contain an additional 529 square feet of living space on substantially the same footprint as the old structure.[6] The new structure maintains the same nonconformities as the old structure with respect to frontage, setbacks, lot size, and building coverage. However, the height of the new structure is 27.2 feet above grade and, therefore, exceeds the maximum allowable height of twenty feet in the coastal conservancy district.

Part of this height increase is due to the property's location in a "velocity zone" as designated by the Federal Emergency Management Agency (FEMA), which mandates pilings instead of a foundation. Pursuant to FEMA regulations, any "substantial improvement" to a structure located within a velocity zone must be built on pilings with an elevation above the 100-year flood elevation.[7] The proposed height of the new structure, not including the FEMA foundation, is 23.5 feet above flood elevation.[8]

2. *Procedural history.* On December 31, 2007, John V.C. Saylor, Georgia A. Saylor, Peter Hallock, Edwin J. Deadrick, and Mary Anne Hall Deadrick filed their complaint appealing from the board's decision to grant a special permit to the Chandlers, pursuant to G. L. c. 40A, § 17.[9] The plaintiffs filed

[6]The footprint of the new structure pushes outward from that of the old structure to a total of twenty-eight feet and would include a squaring off of a twenty-eight square foot notch between the old structure and attached garage, two small entrance porches in the front yard, and two small proposed patios in the rear.

[7]The 100-year flood elevation, as it applies to the locus, is approximately twelve feet.

[8]The Chandlers argue that FEMA regulations, as incorporated into the State building code, required them to raise the new structure's heating, air conditioning and hot water systems, and electrical and plumbing fixtures and equipment above the 100-year flood evaluation. The Chandlers claim that these mechanicals, located in the basement of the old structure, would have to be placed in the attic of the new structure thereby contributing to the new structure's increased height.

[9]After the death of John Saylor, the Land Court judge allowed the plaintiffs' assented to motion to remove John V.C. Saylor and Georgia A. Saylor as parties.

a second amended complaint[10] on March 5, 2008, which added a count under G. L. c. 240, § 14A, seeking an interpretation of § V.B and § IV.A.3 of the Chatham zoning bylaws.

Thereafter, both parties filed cross motions for summary judgment. A judge of the Land Court allowed the Chandlers' motion, concluding that the plaintiffs lacked standing to challenge the special permit. However, in *Hallock* v. *Zoning Bd. of Appeals of Chatham,* 80 Mass. App. Ct. 1104 (2011), an unpublished decision pursuant to rule 1:28 (2011 decision), a panel of this court determined that the Deadricks had standing, and remanded the case to the Land Court.[11]

On remand, both parties renewed their cross motions for summary judgment. In a decision dated February 21, 2013, the Land Court judge allowed the plaintiffs' motion for summary judgment and reversed the board's decision granting the special permit. The judge reasoned that, since the new structure created an additional nonconformity as to its height, the project required a variance rather than a special permit.

On March 6, 2013, the Chandlers filed a motion for reconsideration, or in the alternative, for a ruling on their pending motion for entry of final judgment, arguing that the 2011 decision of this court had determined the merits of the case favorably to them. On April 9, 2013, the Chandlers also filed a motion under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), seeking relief from the judgment on the basis that the last surviving original plaintiff, Mary Anne Deadrick, had died in July, 2012, resulting in a "gap in the title." Thus, the Chandlers claimed that the judgment should be vacated and the complaint dismissed for lack of an aggrieved party at the time the judgment entered. In response, Mary Anne Hall Deadrick's daughter, Sara Deadrick Frye (Frye), acting in her capacity as executor of her mother's estate, filed a motion under Mass.R.Civ.P. 17(a), as amended, 454 Mass. 1401 (1982), to be substituted as plaintiff

---

[10]The plaintiffs' first amended complaint, filed on January 3, 2008, corrected a minor factual issue.

[11]In the 2011 decision, this court determined that Hallock had no standing. The 2011 decision also dismissed a second count of the plaintiffs' complaint, which sought a declaration under G. L. c. 240, § 14A, on procedural grounds. Accordingly, the only remaining issue before the judge on remand was the plaintiffs' appeal of the special permit pursuant to G. L. c. 40A, § 17.

for her deceased mother. On the same day, Sara Deadrick Frye and Mary Anne Hall Deadrick's other children, Stuart Hall Deadrick and Spencer Hall Deadrick (collectively the Deadrick children), appearing in their individual capacities, filed a motion under Mass.R.Civ.P. 20(a), 365 Mass. 766 (1974), seeking to be joined as plaintiffs in this action.[12] The motions for substitution and joinder were allowed on April 30, 2013, but the Land Court judge took under advisement the Chandlers' rule 60(b) motion on the issue of the Deadrick children's standing.

In an order dated June 4, 2013, the judge determined that, because the Deadrick children had some ownership interest in the property from the outset of the dispute, they shared the same harm as their parents. Therefore, the judge concluded the Deadrick children had standing because this court previously had determined that their parents' harm was a basis for standing. In the same order, the judge denied the Chandlers' motion for reconsideration, noting that the 2011 decision was limited to the issue of standing. The judge also rejected the Chandlers' additional argument that § IV.A.3 of the Chatham bylaw, discussed *infra*, permitted the Chandlers to exceed the applicable maximum height restriction. The judge concluded that the board had determined that the new structure constituted an "expansion" under § IV.A.3 of the bylaw, and therefore was ineligible for its exemption from applicable height restrictions; he also expressed his view that if the board had determined that it was not an expansion, such a decision would be arbitrary and capricious. In any event, the judge ruled that the height exemption provided by § IV.A.3 was inapplicable, so that the new structure's increased height created a new nonconformity requiring a variance.

3. *Discussion.* "We review the Land Court judge's summary

---

[12]Accompanying the motions was the affidavit of Sara Deadrick Frye, in which she disclosed to the court that she and her siblings each held some ownership interest in the Deadrick property throughout the litigation, which they obtained from their parents in four separate conveyances between 1991 and 1995. Frye also indicated that, upon their mother's death, she and her siblings succeeded to the remaining interest in the property held by their mother at the time of her death. Lastly, Frye explained that she and her siblings were well aware of the litigation and shared the same concerns that their parents had regarding the much larger house proposed on the Chandler lot and the effect the proposed house would have on their ocean views.

judgment decision de novo. Because the judge does not engage in fact finding in ruling on cross motions for summary judgment, we owe no deference to his assessment of the record." *Marhefka* v. *Zoning Bd. of Appeals of Sutton*, 79 Mass. App. Ct. 515, 517 (2011) (footnote and citations omitted). Turning to the merits of the Chandlers' appeal,[13] we first consider whether the judge correctly decided two issues: (1) whether the board considered the applicability of § IV.A.3 of the bylaw to the new structure, while weighing the Chandler's application for a special permit, and (2) whether the addition of new nonconformities to a pre-existing nonconforming residential structure require a variance or special permit.

On remand after the 2011 decision, the judge properly recognized that the decision was limited to the issue of standing. Specifically, the judge correctly understood that he needed to determine if the board had ruled on the applicability of § IV.A.3 of Chatham's zoning bylaw to the new structure; as he stated: "The first issue is whether the ZBA made a finding as to whether or not the New structure was an expansion of the Old structure."

Section IV.A.3 of the bylaw exempts certain structures from otherwise applicable height restrictions if FEMA regulations require the additional height. See note 5, *supra*. Accordingly, if the new structure is not an "expansion" within the meaning of § IV.A.3, then it qualifies for the exemption created by that section from the otherwise applicable twenty-foot height restriction. The increased height would not be a new nonconformity, and the Chandlers may proceed under their special permit. However, in denying the Chandlers' motion for reconsideration, the judge concluded that the zoning board had already found

---

[13]On appeal, the Chandlers ask us to reconsider our previous 2011 decision, *Hallock* v. *Zoning Bd. of Appeals of Chatham*, 80 Mass. App. Ct. 1104 (2011), where a panel of this court determined that the Deadricks had standing. We decline to revisit the issue. The Chandlers also challenge standing on the grounds that the original Deadrick plaintiffs are now deceased and the substituted plaintiffs, the Deadrick children, do not have standing because they do not live on the locus. Like the Land Court judge, we reject this argument. From the onset of this case the Deadrick children have had some ownership interest in house. As such, the Deadrick children have the same harm as their parents, which we already determined was an adequate basis for standing.

the new structure to be an "expansion," within the meaning of § IV.A.3 and, therefore, confirmed his conclusion that the Chandlers' project required a variance rather than a special permit.

The question of the applicability of § IV.A.3 to the new structure is significant. As discussed below, we conclude that the Land Court judge correctly ruled that the creation of a new nonconformity in a preexisting nonconforming structure requires a variance, and not just a special permit based on substantial detriment pursuant to the second sentence of G. L. c. 40A, § 6. Accordingly, if the new structure is ineligible for the exemption created by § IV.A.3, it requires a variance and the board's decision granting a special permit for the project would be invalid. Conversely, if the new structure is eligible for the exemption created by § IV.A.3, it does not require a variance and the project may proceed by special permit.

a. *Applicability of § IV.A.3 to the new structure.* As we have observed, the Land Court judge correctly recognized that his first task following the remand ordered by the 2011 decision was to determine whether the board considered and determined the applicability of § IV.A.3 to the new structure in its special permit decision. "[A]lthough interpretation of the by-law is in the last analysis a judicial function, deference is owed to a local zoning board's home grown knowledge about the history and purpose of its town's zoning by-law." *Duteau* v. *Zoning Bd. of Appeals of Webster*, 47 Mass. App. Ct. 664, 669 (1999). "Reviewing courts will interpret zoning by-laws 'in accordance with ordinary principles of statutory construction, with some measure of deference given to the board's interpretation.' " *Eastern Point, LLC* v. *Zoning Bd. of Appeals of Gloucester*, 74 Mass. App. Ct. 481, 486 (2009), quoting from *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose*, 50 Mass. App. Ct. 133, 138 (2000). Accordingly, the interpretation of the application of a provision of a local zoning by-law to a request for a special permit ordinarily should be undertaken in the first instance by the local board acting as the special permit granting authority, and only thereafter subject to judicial review within the context of an appeal pursuant to G. L. c. 40A, § 17.

We disagree, however, with the Land Court judge's conclu-

sion that the board considered and determined the applicability of § IV.A.3 to the new structure in its special permit decision. The board's decision does not expressly refer to § IV.A.3. Nor does it appear that the board's use of the term "expand" within its decision was intended to express a conclusion that the new structure constitutes an "expansion" within the meaning of § IV.A.3, making the new structure ineligible for the height exemption it provides.[14] Instead, when the board's decision is considered as a whole, we conclude that its use of the word "expand," in two places, was merely descriptive, in a general sense, of the new structure proposed by the Chandlers' application for a special permit. The board's only mention of height was in the board's finding that the height was "not out of scale for the neighborhood." Significantly, even this single finding was within the board's analysis of whether the new structure was substantially more detrimental to the neighborhood. In fact, the board's decision appears to focus principally, if not exclusively, on whether the new structure would be "substantially more detrimental to the neighborhood," under the rubric of G. L. c. 40A, § 6. We conclude that the board did not consider or determine the applicability of § IV.A.3 to the new structure in its special permit decision.

As we have observed, zoning is a local matter, and questions of interpretation of the local zoning bylaw ordinarily are matters for the local board charged with administration of the bylaw, with some deference thereafter due to the board's resulting interpretation. Here, however, there was no initial determination by the board as to the applicability of § IV.A.3 to the Chandlers' new structure.

Moreover, whether the new structure is an expansion under § IV.A.3 is at least a mixed question of law and fact. As such, the proper application of § IV.A.3 to the particularities of the new structure depends to a great extent on what the municipality intended to achieve by enactment of that section. Since "[t]he object of all statutory construction is to ascertain the true

---

[14]Indeed, the plaintiffs do not contend otherwise. In their brief here, they stated: "The board considered the application solely under Section V.B. and did not address either Section IV.A.3.a or Section IV.A.6.d.1. The board did not address the height issue at all."

intent of the Legislature from the words used. If a liberal, even if not literally exact, interpretation of certain words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose." *Dennis Hous. Corp.* v. *Zoning Bd. of Appeals of Dennis*, 439 Mass. 71, 83 (2003), quoting from *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996). Given the board's local, particularized "home grown" knowledge, we conclude that the board is entitled here to interpret its own bylaw in the first instance.[15] See *Duteau* v. *Zoning Bd. of Appeals of Webster*, 47 Mass. App. Ct. at 669.

b. *The addition of new nonconformities to a pre-existing nonconforming residential structure requires a variance.* Although we conclude that the matter should be remanded to the board, we nonetheless consider whether the Land Court judge correctly concluded that introduction of a new nonconformity to a pre-existing nonconforming residential structure requires a variance, because the question has been fully briefed and argued and because, as noted above, if the Land Court judge was incorrect in his conclusion there would be no need for a remand; the board's special permit decision alone would be sufficient to allow the Chandler's project to proceed, without regard to the applicability of § IV.A.3.

As stated above, the new structure will keep many of the pre-existing nonconformities of the old structure but, if not exempt under § IV.A.3 of the by-law, it will create an *additional* nonconformity with respect to height. Consequently, the judge determined that the addition of a new nonconformity required a variance rather than a special permit. The Chandlers challenge this interpretation, arguing that both new and existing nonconformities fall under the purview of a special permit.

"In resolving this dispute, we are again called on to interpret the 'difficult and infelicitous' language of the first two sentences of G. L. c. 40A, § 6, as they pertain to single or two-family

---

[15]Our opinion is not intended to be read as an expression of any conclusion regarding the question whether the new structure is eligible for the exemption provided by § IV.A.3 of the bylaw. We disagree, however, with the conclusion by the Land Court judge that an interpretation by the board that the new structure qualifies for the exemption furnished by § IV.A.3 would be unreasonable.

residential structures." *Gale* v. *Zoning Bd. of Appeals of Glouces-ter*, 80 Mass. App. Ct. 331, 336-337 (2011) (*Gale*), quoting from *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 55 (1985). General Laws c. 40A, § 6, provides as follows:

> "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit is-sued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent *except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure.* Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted un-less there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood." (Emphasis added).

The highlighted portion above is often referred to as the second "except" clause. *Fitzsimonds* v. *Board of Appeals of Chatham*, *supra* at 56. To our knowledge, the issue whether existing non-conformities and the creation of new nonconformities should be treated differently under the second except clause of c. 40A, § 6, has not been directly addressed by any appellate court. However, in *Gale*, *supra* at 337, this court summarized the general standard for cases concerning the second except clause:

> "[U]nder the second 'except' clause of . . . the statute, as concerns single or two-family residential structures, the

permit granting authority must identify the particular respect or respects in which the existing structure does not conform to the present bylaw and then determine whether the proposed alteration or addition would *intensify the existing nonconformities or result in additional ones.* . . . If the answer to that question is in the affirmative, a finding of no substantial detriment under the second sentence is required." (Quotations and citations omitted.)

Citing the above language, the Land Court judge noted that "[a]t first blush, it appears this statement in *Gale* does not distinguish between reconstruction that results in increased existing nonconformities, versus creating new, additional nonconformities." However, after careful review of the relevant case law, the judge concluded that while intensifying existing nonconformities requires a special permit, the creation of new nonconformities requires a variance. A similar review of relevant cases also is helpful here.

In *Gale, supra,* we determined that the reconstruction of a pre-existing nonconforming residential structure required a special permit to increase or intensify a pre-existing non-conformity. There, the plaintiffs appealed from the entry of summary judgment dismissing their challenge to the board's grant of a special permit to the defendant, their neighbor. *Id.* at 332. The defendant's proposed new structure had a larger footprint than the previous structure and increased the setback nonconformities. *Ibid.* This court upheld the entry of summary judgment, concluding that the board's grant of a special permit, based upon its finding of no substantial detriment to the neighborhood, was all that was required. *Id.* at 337.

Prior to *Gale,* in *Bransford* v. *Zoning Bd. of Appeals of Edgartown,* 444 Mass. 852, 853 (2005), Justice Greaney, in a concurring opinion of an equally divided Supreme Judicial Court, determined that only a special permit, with the requisite finding that the proposed structure was not substantially more detrimental to the neighborhood, was required to increase or exacerbate an existing nonconformity.[16] There, the plaintiff wanted to build a

---

[16]In *Bjorklund* v. *Zoning Bd. of Appeals of Norwell,* 450 Mass. 357, 357-358 (2008), the court adopted the reasoning of the concurring opinion in *Bransford.*

new house which conformed to the zoning by-law's structural requirements, but nonetheless doubled the size of the old structure on a undersized nonconforming lot. *Id.* at 853-854. Because the expansion of the structure's footprint on an undersized lot exacerbated the nonconformity, the court found that a finding of no substantial detriment was required under the second sentence of § 6. *Id.* at 861-862. The court then upheld the board's denial of a special permit as it was within the board's discretion to find that the new structure was substantially more detrimental to the neighborhood. *Id.* at 862.

Therefore, as the Land Court judge noted, "in *Gale* and *Bransford*, the Appeals Court and the Supreme Judicial Court, respectively, were faced with the issue of an extension to a pre-existing nonconformity and those courts properly limited their final holdings to such circumstances." See *Gale, supra* at 338 ("*Bransford* holds that exterior alterations or reconstructions of single or two-family residential structure that increase or intensify any pre-existing nonconformities may be authorized by means of a finding of no substantial detriment under the second sentence of the first paragraph of § 6"). Nonetheless, some confusion arises from the seminal formulation of the operation of the second except clause articulated in *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 21-22 (1987): "[T]he [second 'except' clause] should be read as requiring a board of appeals[17] to identify the particular respect or respects in which the existing structure does not conform to the requirements of the present by-law and then determine whether the proposed alteration or addition would intensify the existing nonconformities or *result in additional ones*."

It is important to observe at this juncture that the second "except" clause is directed to differentiating between those changes to nonconforming residential structures that may be made as of right, and those that require a finding of no substantial detriment under the second sentence of § 6. *Bransford*, for

---

[17]Justice Greaney's concurrence in *Bransford* (which as we have observed was subsequently adopted by a majority of the court in *Bjorklund* v. *Zoning Bd. of Appeals of Norwell*, see note 16, *supra*) expressed the view that the initial determination should be made by the building inspector rather than the board of appeals. See *Bransford, supra* at 858, nn.8, 9.

example, was concerned principally with determining whether a particular change "increased the nonconforming nature" of the residential structure at issue. 444 Mass. at 857. In the present case, it is undisputed that the new structure will increase the nonconforming nature of the old structure. The question, then, is not whether the second "except" clause authorizes the Chandlers' project as a matter of right, without a finding of no substantial detriment, but whether a finding of no substantial detriment under the second sentence of § 6 may authorize the creation of new nonconformities in a pre-existing nonconforming structure. Although we are aware of no appellate case resolving that question in the context of a residential structure, the Supreme Judicial Court has twice concluded that the creation of a new nonconformity in a pre-existing commercial structure requires a variance.

In *Rockwood* v. *Snow Inn Corp.*, 409 Mass. 361, 362, 370 (1991), the board of appeals granted the defendant a special permit to extend two prior nonconforming structures, which were nonconforming as to setback. *Id.* at 362. However, in addition to the setback violation, the proposed new structures also violated the by-law's lot coverage requirement. *Ibid.* Because the violation of the lot coverage requirement created a new, additional nonconformity, the court reversed the grant of the special permit. *Id.* at 370. In reaching its conclusion, the court observed that the first sentence of § 6 provides that the existing by-law "shall apply" to any extension, reconstruction, or alteration of a pre-existing nonconforming structure. Accordingly, the court concluded, the authority to alter an existing nonconforming structure upon a finding of no substantial detriment under the second sentence of § 6 can apply only to changes which themselves conform to the existing by-law, and then only if they are not substantially more detrimental to the neighborhood. In reaching its conclusion, the court observed that "even as to a single or two-family residence, structures to which the statute appears to give special protection, the zoning ordinance or by-law applies to a reconstruction, extension, or change that 'would intensify the existing nonconformities or result in additional ones.' " *Id.* at 364, quoting from *Willard*, 25 Mass. App. Ct. at 22.

To similar effect is *Wrona* v. *Board of Appeals of Pittsfield*, 338 Mass. 87, 89-90 (1958), a case decided under the prior version of c. 40A.[18] In that case, the Supreme Judicial Court determined that a planned extension to a motor freight terminal that was both a pre-existing nonconforming use and structure required a variance. There, the defendant received a special permit to build an extension to his motor freight terminal located in a single residence district. *Id.* at 87-90. The Supreme Judicial Court, however, reversed because the defendant's proposed extension also violated the by-law's setback requirements. *Id.* at 89. Thus, the court concluded that "[t]he board could properly have allowed an extension of the nonconforming use up to the setback lines . . . [h]owever when it permitted the extension beyond the very precise setback requirements contained the ordinance it exceeded its authority." *Ibid.*

Applied strictly to residential structures, the holding in *Rockwood* would require a variance even for extensions of existing nonconformities; its holding is that "[i]f the first and second sentences [of c. 40A, § 6,] are read together, the statute permits extensions and changes to nonconforming structures if (1) the extensions or changes themselves comply with the ordinance or by-law, and (2) the structures as extended or changed are found to be not substantially more detrimental to the neighborhood than the preexisting nonconforming structure or structures." *Rockwood* v. *Snow Inn Corp.*, 409 Mass. at 364. However, a long line of cases, notably including *Bransford* and *Bjorklund*, have held that an alteration which intensifies an existing nonconformity in a *residential* structure may be authorized under the second sentence of § 6 upon a finding of no substantial detriment. See *Gale* v. *Zoning Bd. of Appeals of Gloucester*, 80 Mass. App. Ct. at 338, distinguishing *Rockwood* v. *Snow Inn Corp.*, on the ground that it dealt with a commercial structure rather than a residential one.

As the Supreme Judicial Court made clear in *Bransford*, 444

---

[18]We note that the second "except" clause appearing in the first sentence of the present c. 40A, § 6, "had 'no identifiable ancestor in G. L. c. 40A, as in effect prior to St. 1975, c. 808, § 3,' and 'made its first appearance, without accompanying explanation . . . in 1974 House Doc. No. 5864.' " *Bransford*, 444 Mass. at 858, quoting from *Willard*, 25 Mass. App. Ct. at 18.

Mass. at 859, "the ultimate objectives of zoning would be furthered by the eventual elimination of nonconformities in most cases." (Citation omitted.) See *Strazzula* v. *Building Inspector of Wellesley*, 357 Mass. 694, 697 (1970), cert. denied, 400 U.S. 1004 (1971) (considering eventual elimination of nonconforming uses as an objective underlying zoning regulations). As the plaintiffs observe, the fallacy of the Chandlers' contention that an alteration creating a new nonconformity may be authorized upon a finding of no substantial detriment is illustrated by contrasting a landowner with a *conforming* structure who wishes to construct an addition that violates the applicable setback requirements (which would require a variance) with a neighboring landowner with a *nonconforming* structure as to height who also wishes to construct an identical addition, also encroaching to the same extent into the required setback (which, according to the Chandlers, would require only a finding of no substantial detriment). Such a result is illogical, given the significantly more stringent burden for a variance, which is granted "only in rare instances and under exceptional circumstances," *Blackman* v. *Board of Appeals of Barnstable*, 334 Mass. 446, 450 (1956), quoting from *Hammond* v. *Board of Appeals of Springfield*, 257 Mass. 446, 448 (1926), compared to the lesser burden for a special permit. See *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 153-154 (1976), and cases cited therein. "If a sensible construction is available, [a court] shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000). Like the Land Court judge, we construe the provisions of the first and second sentences of § 6 together to allow extension of existing nonconformities upon a showing of no substantial detriment, but to require a variance for the creation of any new nonconformity.[19]

*Conclusion.* For the reasons expressed above, the judgment

---

[19]We likewise reject the Chandlers' suggestion that § V.B. of the Chatham by-law can be read to confer blanket authority on the board to authorize, by special permit, any and all alterations, extensions or other changes to a pre-existing, nonconforming structure, only upon finding that such changes will not be substantially more detrimental to the neighborhood. Section V.B. does not have such a broad scope. Instead, it merely indicates that a vertical addition that is confined to the structure's existing footprint may still call for a special

granting the plaintiffs' cross motion for summary judgment and the order denying the Chandlers' motion for reconsideration are vacated. The matter is remanded to the Chatham zoning board of appeals to determine whether the Chandlers' proposed new structure is eligible for the exemption provided under § IV.A.3 of the Chatham by-law from otherwise applicable height limitations.

*So ordered.*

---

permit. See, e.g., *Goldhirsh* v. *McNear*, 32 Mass. App. Ct. 455, 461 (1992) (rejecting the notion that "there will never be an increase in a structure's nonconforming nature where the proposed alterations are confined to the existing footprint").